Wright *v.* Douglass.

---

SAME TERM. *Before the same Justices.*

### WRIGHT *vs.* DOUGLASS.

In an action of ejectment the plaintiff claimed title under a sheriff's sale upon a judgment in his favor against the Towanda Bank, recovered upon an attachment issued against the bank as a foreign corporation. To show the title to the premises in the bank at the time they were seized by virtue of his attachment, the plaintiff proved the recovery of a judgment by the bank against Dennis, the former owner, the sale of such premises upon an execution issued thereon, and the purchase thereof by the bank, at the sheriff's sale, and the execution of a certificate by the sheriff to the bank, as such purchaser, dated June 6, 1838. The plaintiff then gave in evidence a deed of the premises from the sheriff to the bank, dated December 16, 1845, after the commencement of the suit; but there was no proof of the *delivery* of this deed to the bank, or to any person having authority to accept it on behalf of the bank. In addition to this, it appeared the bank itself had

Wright v. Douglass.

elected to abandon the inchoate title it had acquired by the sheriff's certificate, and had sought, by a different method, to obtain a beneficial interest in the premises, and to convey that interest, together with an outstanding trust estate, to another creditor, the defendant, in satisfaction of a just debt. The bank had moreover become insolvent, and had ceased from all business operations some years before the date of the instrument;

*Held* that the deed could not be upheld as having been delivered either to the grantee, or to any agent authorized to accept it on behalf of the bank, so as to vest the title in the bank, by relation, at the time when the attachment was served; but that it must be regarded as having been procured by, and delivered to, the plaintiff, without the knowledge or consent of the bank, or of the defendant, to whom the rights and interests of the bank in the premises had been transferred.

*Held also*, that it was competent for the Bank of Towanda and Dennis to agree to abandon the sheriff's certificate and to adopt a direct mode of acquiring a title to the premises by a conveyance, and for the bank to transmit that title to any creditor, in payment of a just debt. And that no one could question the legality of such a proceeding except a creditor who stood in a situation to challenge the transaction as a fraud upon his rights.

And Dennis having executed a deed of the premises to Dana, the attorney and trustee of the Bank of Towanda, on the 4th of December, 1839, which it appeared from the evidence was executed by the consent and procurement of the bank, and that the bank furnished the consideration, viz. the debt due from Dennis to the bank;

*Held further*, that this was a new arrangement which, as between Dennis and the bank, subverted the title derived under the sheriff's certificate. That such deed was inconsistent with the title derived under the sheriff's sale, and must be held to be evidence that such title was abandoned, by a mutual agreement of the parties; that thenceforth the bank possessed no right or interest in the premises by virtue of the sheriff's certificate; and that consequently the plaintiff could not acquire any title based on such certificate.

*Held also*, that the bank having furnished the funds which constituted the consideration of the conveyance, the deed from Dennis to Dana created a resulting trust in favor of the bank—it not appearing that any trust was expressed on its face—and that it conveyed the entire estate in the land to Dana, by virtue of the 51st section of the article of the revised statutes relative to uses and trusts, subject only to the provisions of the 52d section of that article; and that to entitle himself to recover, the plaintiff must bring himself within the provisions of the 52d section, by showing that he was a creditor of the bank, at the date of the deed.

*Held further*, that the fact that the plaintiff's claim was founded on bank notes issued by the Towanda Bank, bearing various dates from 1835 to 1841, without any proof to show when such notes were issued by the bank, or when the plaintiff received them, or how large a portion of the indebtedness constituting the plaintiff's judgment arose upon notes bearing date before the execution of the deed, furnished no evidence that the plaintiff was a creditor of the bank at the date of the deed.

By the terms of the 52d section of the article of the revised statutes relative to uses

Wright *v.* Douglass.

and trusts, where a grant is made to one person and the consideration is paid by another, a trust results in favor of *all the creditors* of the person paying the consideration. It does not make the conveyance void *in toto*, as the statute of frauds does, but only *pro tanto*, to the extent that may be necessary to satisfy the just demands of such creditors.

Accordingly, a creditor of the person paying the consideration cannot obtain a judgment at law for an indebtedness, *a part of which arose after the conveyance*, and by a sale for the satisfaction of the whole judgment transfer the title of the whole of the premises embraced in the conveyance. On the contrary the creditors must seek their remedies in equity, where alone the rights of all parties can be properly adjusted.

The beneficial interest of a *cestui que trust* in lands cannot be sold on a judgment and execution at law.

Under the act of 1842, relative to proceedings by attachment against foreign corporations, by which provision is made for seizing the trust property of such corporations in this state, the attachment must be executed by leaving a copy thereof with the trustee.

Where a statute has prescribed a personal service of process as the commencement of any legal proceeding, the directions of the statute must be obeyed, if a personal service is possible; or the court or officer will not acquire jurisdiction over the person of the defendant.

Ejectment cannot be maintained unless the plaintiff has the legal estate in the premises.

This was an action of ejectment brought to recover the north half of lot No. 130, in George Scriba's fish pond, or location in Constantia, Oswego county, and was tried before Judge Gridley, at the Oswego circuit, in December, 1846. The defendant admitted that he was in possession at the commencement of the suit. The plaintiff's counsel, for the purpose of proving title in the plaintiff, produced and read in evidence the following documentary evidence. (1.) Exemplification of a deed from John McVickar and wife to Eben J. Dennis, of the premises in question, dated August 1, 1835, duly acknowledged and recorded in Oswego county clerk's office, December 28th, 1835. (2.) Exemplification of a judgment record in the supreme court, in favor of the Towanda Bank, against Eben J. Dennis, in assumpsit; judgment docketed October 23, 1837, for $2098,43. (3.) Exemplification of a test. *fi. fa.* upon this judgment to the sheriff of Oswego county, tested 23d of October, 1837, returnable on the first Monday of January thereafter, with directions to levy the amount of the judgment and interest; with the

sheriff's return endorsed, of a levy upon the premises in question—referring to the above deed from John McVickar and wife to E. Dennis as recorded. The levy was made on the 4th of December, 1837. The sheriff returned that he had made $1618,37, and *nulla bona* as to residue. (4.) Exemplification of a certificate of sale from the sheriff of Oswego, dated 6th of June, 1838, made out and subscribed in duplicate, and filed in the office of the clerk of Oswego, on the 22d of June, 1838, showing that the premises in question were sold under the above execution in due form on the 6th of June, 1838, at public auction, in the town of Constantia, describing the premises, and whereof Dennis was seised on the 23d of October, 1837, to the Towanda Bank, who became the purchaser, at $1600; and that the purchaser would be entitled to a deed. (5.) Deed from Jonathan Case, late sheriff of Oswego, reciting the above execution and sale and certificate, and that 15 months had expired and no redemption had been made, and conveying the premises in question to the Towanda Bank. Deed dated 16th of December, 1845, acknowledged but not recorded. (6.) Exemplification of an act of the general assembly of Pennsylvania incorporating the Towanda Bank, to be located in Towanda, Pennsylvania. (7.) Exemplification of letters patent from the governor of Pennsylvania, constituting the said bank a body corporate, until November 1, 1849. (8.) Exemplified copy of an attachment issued out of the supreme court of this state, in favor of James Wright, (plaintiff in this suit,) against the Towanda Bank, directed to the sheriff of the county of Oswego, reciting that the said James Wright, a resident of Tioga county, had made application in writing to John J. Taylor, supreme court commissioner of that county, for the issuing and allowance of an attachment against the Towanda Bank, a corporation created under the laws of Pennsylvania; that he had presented his petition and affidavit, &c. verifying the fact and circumstances, &c. and commanding the sheriff of Oswego to attach the estate, real and personal, of the Towanda Bank, and particularly the premises in question, which were described in the attachment; the attachment being in due form, tested May 1,

1843, and returnable on the 1st Monday of July following. The commissioner's order for the attachment was endorsed upon the attachment, dated 26th of June, 1843, and the sheriff of Oswego, Norman Rowe, by Edwin Chase, his deputy, returned upon this attachment that he had attached the said premises, describing them. (9.) Exemplification of a judgment record in the attachment suit, in the supreme court, in favor of James Wright against the Towanda bank. Judgment docketed 18th of November, 1843, for damages and costs, $1851,69. The record set forth the proceedings by attachment, under the statute, against the Towanda Bank as a foreign corporation, and was founded upon divers promissory notes issued by the Towanda Bank, presented for payment and not paid. The particular notes were set forth in the notice accompanying the bill or declaration ; which were of various denominations and of different dates from 1835 to 1841, and judgment was entered by default after due proof of service of notice as required by the order of the court and the provisions of the statute. (10.) Exemplification of an execution under this judgment, directed to the sheriff of Oswego, for $1851,69, tested 26th of December, 1843. Endorsed as received 30th of December, 1843, and as made in full, by N. Rowe, late sheriff, E. Chase, deputy, by sale of real estate. There was also the following endorsement :

"Feb'y 24, 1844. Recd. payment in full, by purchase of real estate; 500 acres of land in Constantia, sold this day to me, by virtue of the within execution, for $1924.

JAMES WRIGHT, by Alex. Brooks."

(11.) Certificate of sale by Norman Rowe, late sheriff, E. Chase, late deputy, dated 24th of February, 1844; showing the sale of the premises in question under the execution last mentioned, for $1924, and the purchase thereof by James Wright, (by Alex. Brooks,) and that Wright would be entitled to a deed in 15 months, unless the premises were redeemed. (12.) Deed from Norman Rowe, late sheriff of Oswego, to James Wright for the same premises, (by E. Chase, late deputy,) dated 30th of August, 1845, reciting the execution, the levy upon the prem-

Wright *v.* Douglass.

ises in question, and the sale and certificate, and that the 15 months had expired without redemption. Deed duly acknowledged and recorded 29th of September, 1845. (13.) Exemplification of a deed dated August 15, 1843, and recorded in Oswego county clerk's office on the 21st of August, 1843, between Amasa Dana of the first part, the Towanda Bank, by C. L. Ward their president, of the second part, and William B. Douglass, cashier of the Bank of Ithaca, of the third part, for the premises in question.   Of this deed the following is a copy :

" This indenture, made the fifteenth day of August, 1843, between Amasa Dana of Ithaca, in the county of Tompkins and state of New-York, trustee for the Towanda Bank, of the first part; the said Towanda Bank, by C. L. Ward their president and authorized agent, of the second part; and William B. Douglass, cashier of the Bank of Ithaca, of the third part, witnesseth : Whereas, all that certain piece or parcel of land situate, lying and being in Constantia, &c. [describing the premises,] containing five hundred acres of land including the pond, has been conveyed to, and the title thereof vested in, the said party of the first part *as the trustee and for the use of the party of the second part,* and a mortgage on the said land given by Eben Dennis to John McVickar for about the sum of $2285, has also been assigned to the said party of the first part, and is held as a security to protect the title to the said land ; and the said party of the second part wishing and directing the said land, and the said mortgage thereon, conveyed and transferred by the said party of the first part to the said party of the third part—now therefore, this indenture witnesseth, that the said parties of the first and second part in consideration of the sum of two thousand dollars to the said party of the second part in hand paid, the receipt whereof is hereby acknowledged, have granted, bargained, sold, &c. and by these presents do grant, bargain, &c. unto the said party of the third part, his heirs and assigns, all and singular the said piece, parcel or tract of land herein above described, with the said mortgage above mentioned, together," &c. (with a covenant of warranty from the party of the second part.)

(14.) The certificate of Henry S. Walbridge, judge of Tompkins county court and counsellor of the supreme court, which was admitted in evidence by stipulation between the attorneys of the plaintiff and defendant, " with the like effect as if the said H. S. Walbridge was personally present and sworn upon the trial and testified to the facts stated in his certificate." This certificate set forth the presenting of a petition to him, on the 28th of June, 1843, by Amasa Dana on behalf and in the name of the Ithaca Bank, for an attachment against the Towanda Bank as a foreign corporation; the proceedings which were thereupon had; and the issuing of two attachments, the one directed to the sheriff of the county of Oswego, and the other to the sheriff of the county of Tioga; the return of such attachments to the judge, by the sheriffs, on the 12th of July, 1843; and the sending of the same, with the other papers, to the clerk's office at Geneva, to be filed. And that on the 27th of October, 1843, Mr. Dana paid the judge his fees, stating, or giving him to understand, that nothing further was to be done.

(15.) Exemplification of the attachment issued by the said H. S. Walbridge in favor of the Bank of Ithaca, against the Towanda Bank, directed to the sheriff of Oswego, and directing him to attach the estate real and personal of the Towanda Bank. This attachment was not under the seal of the supreme or any court, but was signed by the said Walbridge as judge, and under his own seal. Upon this attachment there was endorsed a return of N. Rowe, as sheriff of Oswego, by L. P. Baker, deputy, that he had levied upon or seized the premises in question—describing them—and appraising them, with the assistance of Eben J. Dennis and N. Webb, as appraisers. The attachment was filed and returned July 24, 1843. (16.) Exemplified copy of bond given in the attachment proceedings before Judge Walbridge. (17.) Sundry letters from Wm. B. Douglass, signed as cashier, addressed to John A. Collier, plaintiff's counsel. William B. Storm, a witness for the plaintiff testified that he was formerly the cashier of Towanda Bank; that he went into the bank in 1835, and left it in 1841. He had seen Eben J. Dennis, who was endorser of a note dis-

Wright *v.* Douglass.

counted at the Towanda Bank, and protested for non-payment. The note was sent to Bruyn & Dana, attorneys, of Ithaca, for collection, and was prosecuted to judgment and execution, and the real estate of Dennis bid in for the debt. There was an outstanding mortgage on the property, upon which the Towanda Bank paid about $1900, and when witness left the bank there was about $500 or $600 due. Witness was on the premises in Constantia, in 1841. E. J. Dennis was in possession, or said to be. Witness went there on behalf of the Towanda Bank; that he never saw this outstanding mortgage. He did not see the money paid on the mortgage. The $1900 was remitted to Mr. Dana from 1837 to 1841, he thinks in 1840, for the purpose of applying on this mortgage. Witness left an account of this money in the Towanda Bank. The plaintiff's counsel then introduced the testimony of William Elwell and Christopher L. Ward, of Towanda, Pennsylvania, taken under a commission issued in this cause. William Elwell testified, among other things, that he was an attorney at law. He was elected director in the Towanda Bank, in December, 1843 or 1844. In May, 1844, the bank made a partial assignment of its effects to D. Bullock, S. C. Mason and witness. The bank was organized and commenced issuing notes in January, 1835, and continued to do ordinary banking business till January, 1842, when it stopped payment; after which they failed to redeem their notes, of which they had a large amount in circulation. The bank was insolvent when it stopped payment in 1842. There is still a large amount of the notes of the bank outstanding or in circulation. C. L. Ward testified, that he was an attorney at law, residing at Towanda. Witness was elected president and director of the Towanda Bank, on or about the 12th of May, 1841. The bank was organized in January, 1835, and did all ordinary banking business. It appears by the bill book of the bank that a bill drawn by Luther Anthony for $2000, at ninety days, endorsed by Eben J. Dennis and James Cleaveland, was discounted. It fell due 31st of May, 1837, and was protested for non-payment and notice given to endorsers. Of the parties witness only knew Dennis. That it

appears from the receipt book of the bank for notes sent for collection, that the note above referred to was receipted for collection on the 17th day of August, 1837, by Bruyn & Dana, who then resided at Ithaca. Mr. Dana informed witness that the Towanda Bank had an interest in the property on which Dennis resided on Oneida lake, Oswego county. That the witness afterwards obtained from L. B. Gosman a sheriff's certificate of a sale of the property. Cannot recollect distinctly as to the description of the property in the sheriff's certificate, but it was situated on the north bank of Oneida lake. Witness understood from Mr. Gosman, or Mr. Dana, that the property embraced in the certificate was the interest of the Towanda Bank. (Gosman was partner of Dana.) Witness has heard that Mr. McVicker, of New-York, had a mortgage on this property, the amount or date of which he does not know. Mr. Storm, a former cashier of the bank, in accounting to witness for a deficiency in his cash account, stated, among other matters, that he had "advanced on a Mr. McVicker's mortgage, and to further secure L. Anthony's debt to the bank," the sum of $1904,31. This appears from a memorandum given at the time his cash account was examined, and the witness derived his knowledge of this payment only from the above memorandum. This was counted as so much cash which should have been in bank, and so remains. No other entry of this payment on the books of the bank. It appears from the book of partial payments kept by the bank, that $644 had been received on account of the Anthony debt, but by whom paid does not appear. Witness received a letter from S. B. Gosman, June 1, 1841, in which he stated that McVicker required a further payment on his mortgage. Witness replied to it June 18, 1841, and enclosed a draft on the Bank of Owego for $500, to him, to apply on the mortgage. The draft was subsequently returned to witness, paid. On the 5th of November, 1841, as appears by the books of the bank, witness remitted to him a certificate of deposit for $143,11, in the Rochester Savings Bank, and a check on the Bank of Owego for $400, which was subsequently returned paid. These remittances to Gosman

Wright v, Douglass.

were made by witness as president of the Towanda Bank, to apply on the McVicker mortgage, After these payments, should think there was not much if any thing due. Under the general authority of a resolution of the directors of the Towanda Bank, in relation to the assets and claims of the bank in the state of New-York, the witness made a settlement with the Bank of Ithaca, by which it appeared that the former was indebted to the latter about $1700; to secure which witness agreed, on the part of the Towanda Bank, to assign and have transferred all the interest of the Towanda Bank, in, and to the Dennis property, so called, to William B. Douglass, in trust to pay the aforesaid amount, with interest and charges, and to account for the balance of the proceeds on the sale of the property to the Towanda Bank, or its assigns; in pursuance of which agreement witness executed a release or deed of the interest of the Towanda Bank in the aforesaid property, in which deed or release Mr. Dana united. Witness does not recollect of any thing being said about the McVicker mortgage in any way. No other consideration, except as above stated, passed at the time, to the witness' knowledge, among the parties, This was done on or about the 15th of August, 1843. This settlement was subsequently confirmed by the directors of the Towanda Bank, by a resolution. Witness had heard, previous to the conveyance to Douglass, that certain parties residing in Pennsylvania had gathered a considerable amount of the notes of the Towanda Bank, which had been left or given to Mr. Wright to institute proceedings against the property of the Towanda Bank. Witness' information as to the property to be attached pointed to other property than that embraced in the assignment to William B. Douglass. The assignment was not made to prefer any creditor of the Towanda Bank, or to get rid of the operation of any existing attachment or lien against the Towanda Bank; nor had witness any conversation with Mr. Douglass or Mr. Dana upon the subject of any existing attachment. The witness never understood from the plaintiff, that the claim on which his judgment was founded was for circulating bills of the bank; nor does he know when the plain-

tiff received the bills, nor when payment was demanded. The plaintiff here rested ; and the defendant's counsel moved for a nonsuit upon the following grounds : First, that the proceedings under the attachment in favor of the plaintiff against the Towanda Bank were void, because it was not served upon Amasa Dana as trustee, as required by the second section of the act to amend the law in relation to suits against foreign corporations, passed April 11, 1842. *Second*, because the evidence introduced by the plaintiff was not sufficient to prove title in the plaintiff to the premises in question. The judge refused to nonsuit the plaintiff, and the defendant's counsel excepted. The defendant's counsel then introduced : 1st. A deed for the premises in question from Eben J. Dennis to Amasa Dana, consideration $1, dated 4th of December, 1839, acknowledged or proved the 2nd of August, 1842, and recorded in Oswego county clerk's office the 30th of October, 1845. 2nd. A mortgage from Eben J. Dennis to John McVicker, dated 1st of August, 1835, of the premises in question, conditioned for the payment of $2285, and interest annually ; the mortgage being expressed to be given for the purchase money. The mortgage was duly acknowledged and recorded in Oswego county clerk's office, 28th of December, 1835. 3d. An assignment of said mortgage from John McVicker to Amasa Dana, indorsed upon said mortgage, dated 11th of December, 1841, and duly acknowledged on that day, but not recorded. It was admitted that the whole amount paid by A. Dana to J. McVicker was from the moneys advanced by the Towanda bank. Upon this evidence it was agreed that a verdict be taken for the plaintiff, for the premises in question, subject to the opinion of the supreme court, upon a case to be made.

*J. A. Collier*, for the plaintiff. The plaintiff showed a regular judgment against the Towanda Bank, a foreign corporation, and a title under it, and by the attachment, judgment, execution and sheriff's deed he acquired the whole interest, whatever it was, of the Towanda Bank, which was the proper subject of levy and sale. At the time of issuing and service of the at-

tachment, the title to the premises was either vested in the Towanda Bank or it was held by Amasa Dana, their attorney, as trustee, and for the benefit, and to the use of the Towanda Bank, and in either case the property was liable to be attached and sold under the plaintiff's judgment and execution. As between the plaintiff and the Towanda Bank, the effect of the attachment and sale was to substitute the plaintiff in the place of the Towanda Bank. The bank had previously purchased the premises in their own name, and the time of redemption had expired, and they were therefore entitled to a deed from the sheriff. When that deed was executed, it had relation back to the time when the fifteen months expired; and this title passed to the plaintiff. (3 *Caines*, 198. 4 *Cowen*, 602. 9 *Id.* 84, 85, 602. 3 *Id.* 75, 80. 2 *John.* 520. 15 *Id.* 309. 4 *Hill*, 171. 11 *Ves.* 559. 20 *John.* 5. 1 *Hill*, 107, 110. 22 *Wend.* 121, 125. 5 *Hill*, 525. 9 *Cowen*, 73. 18 *John.* 94.) When the conveyance was made to Dana, by the judgment debtor of the Towanda Bank, if it had any effect as against the plaintiff (which is denied,) the right to the possession and profits was intended to be vested in the Towanda Bank, by whom the whole consideration was paid, and Dana held as a mere trustee, and by the statute of uses and trusts, no estate vested in the trustee, but it vested in the bank as a legal estate. At any rate it was to be deemed fraudulent as against the plaintiff who was a creditor, and particularly as the deed was not recorded. (1 *R. L.* 728, §§ 52, 53. *Id.* 730, § 65. 5 *Cowen*, 485.) By the express terms of the statute, " lands, tenements and real estate, holden by any one in trust, or for the use of another, shall be liable to debts, judgments, decrees, executions and *attachments* against the person to whose use they are holden." And " all trust property real or personal" is by the act of 1842, made liable to be " attached, levied upon and sold." (2 *R. S.* 368, § 26 ; 459, §§ 15, 16. 1 *Id.* 727, §§ 45, 47, 49. *Laws of* 1842, *ch.* 147, § 1. 9 *Paige*, 216, 238. 4 *Wend.* 462. 1 *R. L.* 74. 2 *Wend.* 570.) The Towanda Bank, Dana and the defendant all being parties to the deed under which the defendant claims, and it being by that deed expressly declared that Dana held the property as trus-

tee, and to the use and for the benefit of the Towanda Bank, and both the bank and Dana being grantors, all the parties are estopped from denying the title of the Towanda Bank. Nor is it material that it be shown how Dana acquired the title. It is sufficient that he confessedly held as the mere trustee. (9 *Wend.* 209. 3 *Id.* 99. 3 *John. Ch.* 174. 3 *John.* 331. 14 *Id.* 224. 10 *Id.* 223, 4, 292. 12 *Id.* 357. 24 *Pick.* 324.) So is the defendant estopped by the proceedings on the part of the Bank of Ithaca, to which the defendant and Dana were both parties, and under which the premises were levied upon as the property of the Towanda Bank, thereby recognizing their title. (8 *John.* 347. 11 *Id.* 228.) The property was bound from the time of the levy under the *attachment ;* and the defendant having taken his deed since the levy, he acquired no title under it as against the plaintiff, but takes subject to the plaintiff's lien, even if the deed to him were not otherwise objectionable. (2 *R. S.* 459, § 16. *Id.* 460, 461, §§ 21, 24. 6 *Hill,* 362. 7 *Paige,* 216, 218. *Laws of* 1842, *ch.* 197, § 4, *pp.* 227, 228.) It was not necessary to serve any copy of the attachment upon Dana as trustee. The provisions of the 2d section of the act of 1842, apply only to " trust property, *funds,*" or *personal* funds in the hands of trustees, and have no application to real estate, held in trust, or held fraudulently. Besides ; this objection goes merely to the regularity of the proceedings, which could not be brought into controversy or questioned in this collateral way ; nor was the defendant in a position to make the objection. The deed from Dana and the Towanda Bank to the defendant was *void.* (1.) Because the Towanda Bank being insolvent, or having suspended payment, could not legally convey or give a preference to another creditor. (2.) A trust or interest was reserved to the Towanda Bank to whom the surplus was to be paid after paying the amount due to the Bank of Ithaca. (3.) The defendant took the title as trustee and for the benefit of the Bank of Ithaca ; which is prohibited by statute. The conveyance should have been directly to the bank, by its corporate name. (1 *R. S.* 591, § 10. *Id.* 603, § 4. *Id.* 457, § 2. 5 *Hill,* 221. 25 *Wend.* 648, 650. 14 *John.* 458, 462, 464, 5. 4 *Wend.* 100. 5

*Cowen*, 547.   9 *Id.* 73, 85, 6.   6 *Hill*, 438, 442.   20 *John.* 5, 442.   1 *R. S.* 591, § 7.   *Id.* 599, § 54.)   The title therefore remained in the grantors, the Towanda Bank, or Dana as trustee, and passed to the plaintiff by the sale under his judgment.

*B. D. Noxon*, for the defendant.   The defendant was entitled to a nonsuit, upon the grounds taken on the trial.   Dana received the absolute fee of the premises in question by deed from Dennis the owner, on the 4th of December, 1839, free and clear from any trust : unless the plaintiff *was* at *that time* a creditor of the Towanda Bank.   He was not such a creditor unless he held the notes of the bank at that time; of which there was and is no evidence.   (1 *R. S.* 728, §§ 51, 52.)   The judgment in favor of the plaintiff against the Towanda Bank was void, and could not be a lien on the premises in question in the hands of Dana; because no copy of the attachment was left with Dana, who the plaintiff insists was a trustee of the property by him claimed.   This is a jurisdictional fact, and the omission was fatal to the judgment.   ( 2 *R. S.* 459, §§ 15, 21.   *Laws of* 1842, *p.* 227, §§ 1, 2.   1 *Hill*, 111.   4 *Id.* 86, 7.)   If a resulting trust was established, the plaintiff could not sell the premises under his execution; his remedy was in chancery to obtain satisfaction of his debt; because the trust results *in favor of the creditors*, not *in favor of the bank*.   The creditors become the *cestuis que trust*, and Dana the trustee; and the creditors are not required, directed or authorized to sell their own property on an execution against the bank.   A mere equitable interest, as that arising to a purchaser at a sheriff's sale under and by virtue of the sheriff's certificate, cannot be sold on execution against such purchaser, so as to vest any title or interest in the purchaser under such execution.   The first debtor's title is not divested.   The deed from the sheriff of Oswego to the Towanda Bank, produced by the plaintiff, acknowledged but not recorded, bearing date 16th of December, 1845, is not proved to have been delivered to the bank, and the presumption of delivery does not arise; besides, it was made by the sheriff long after the issue in this cause was joined, and cannot be considered in evi-

dence in the cause; at least against the defendant. Again; the title of the bank under that deed was never sold; and Dennis had long before conveyed to Dana in satisfaction of the judgment. The mortgage from Dennis to McVicker is a perfect defence to the defendant; he being the assignee thereof, and in possession of the premises.

*By the Court,* GRIDLEY, J. It is indispensable to the plaintiff's right to recover that he should establish in himself a legal title to the premises in question at the time when this suit was commenced. The title under which he claims is derived under a sheriff's deed, executed upon a sale under a judgment, obtained in a suit commenced against the Towanda Bank, as a foreign corporation, wherein the attachment was served by a levy on the premises, on the 26th day of June, 1843. If then, the Towanda Bank held the legal title to the premises on that day, the plaintiff's right to recover is probably made out. (6 *Hill,* 362.)

To establish this fact, the plaintiff proved a judgment in favor of the bank, against one Eben J. Dennis, the common and admitted source of title of both parties, and a sale under the judgment, with a sheriff's certificate, executed to the bank as the purchaser, bearing date June 6th, 1838. In addition to this, the plaintiff gave in evidence a sheriff's deed, reciting the sale to the bank, and dated on the 16th of December, 1845. If this deed is an available instrument for the plaintiff, conveying the title of Dennis to the bank, then, notwithstanding its recent date, it would probably be good by relation; and for all the purposes of this suit, would prove the legal title to have been in the bank, when the premises were levied on by the plaintiff's attachment. But the validity of this deed, as an operative instrument, is disputed by the defendant on two grounds.

1st. It is said that there is no proof of a *delivery* of it to the bank, or to any person having authority to accept it on behalf of the bank. The deed bears date since the commencement of this suit, and is produced by the plaintiff, a creditor who is seeking to collect a debt against the bank by a hostile proceeding.

In addition to this, it would seem that the bank itself had elected to abandon the inchoate title it had acquired by the sheriff's certificate; and had sought, by a different method, to obtain a beneficial interest in the premises, and to convey that interest, together with an outstanding trust estate, to another creditor in satisfaction of a just debt. When we consider these facts in connexion with the circumstance that the bank itself became utterly insolvent, and ceased from all business operations some years before the date of the instrument, it is impossible to uphold this deed as having been delivered, either to the grantee, or to any agent whose authority to accept it, on behalf of the grantee, can be fairly presumed. It was doubtless procured by and delivered to the plaintiff without any knowledge or consent of the bank, or of the defendant to whom the rights and interests of the bank in the premises had been transferred. What relief might be granted in a court of equity in a case where the rights of third parties were not concerned, and where a judgment debtor fraudulently refused to receive a deed from a sheriff, under circumstances like the present, is a very different question. We are here in a court of *law*, and not in a court of *equity*. The rights of third persons *are* concerned, and were acquired prior in time to the service of the plaintiff's attachment. And we are not prepared to say, from any evidence before us, that those rights and interests which are now represented by the defendant, are not equally worthy of the protection of a court of equity as those of the plaintiff. It was certainly competent for the Bank of Towanda and Dennis to agree to abandon the sheriff's certificate; and to adopt a direct mode of acquiring a title to the premises by a conveyance, and for the bank to transmit that title to any creditor in payment of a just debt. No one can question the legality of such a proceeding, except a creditor who stands in a situation to challenge the transaction as a fraud upon his rights. But it is not pretended that the demand of the Bank of Ithaca was not a just debt; and the right to pay one creditor in preference of another cannot be disputed. We do not think, for these reasons, that the plaintiff had any power to accept this deed for the bank, so as to

vest the title in the bank by relation at the time when the at-
tachment was served. The deed therefore not having been
*legally delivered*, has no validity or operative effect whatever.
But, 2dly. There is another objection to the validity of any
title derived under this deed. And this arises upon the legal
effect of the deed executed by Eben J. Dennis to Amasa S.
Dana, the attorney and trustee of the bank, on the 4th day of
December, 1830. I think that we are bound to conclude from
the evidence, that this deed was so executed by the consent and
procurement of the bank, and that the bank furnished the con-
sideration, which was the debt due from Dennis to the bank.
This was a new arrangement which, as between Dennis and
the bank, subverted the title, (such as it was,) which was de-
rived under the certificate of the sheriff. It was utterly incon-
sistent with that title, and must be held to be evidence that it
was abandoned by a mutual agreement of the parties. If this
be so, then the bank, after the 4th of December, 1839, possessed
no right or interest or estate in the premises, by virtue of the
certificate of the sheriff; and by necessary consequence, it was
impossible for the plaintiff to acquire any legal or other title
based on such certificate of sale.

The conclusion to which I have come on this branch of the
case renders it necessary to inquire whether the plaintiff has
acquired the title that was conveyed by Dennis to Dana by
the deed of December 4th, 1839 ; and whether the title so ac-
quired (if he in fact acquired any,) was a *legal estate.* In
conducting this inquiry, the first question which arises, is *what
estate* was conveyed to Dana under the deed of Dennis ? The
counsel of the plaintiff has argued that by virtue of the 47th
and 49th section of the act entitled " *of uses and trusts,*" (1 *R. S.*
728,) the bank took the *whole estate,* as though the conveyance
had been made directly to the bank, and therefore that the ser-
vice of the attachment created a lien on the legal estate in the
premises, which was consummated in the plaintiff when he
finally received his deed from the sheriff founded upon a sale
of the premises under a judgment obtained in the attachment
suit, and bearing date August 30, 1845. Those sections how-

ever, are, by the very terms of the 50th section of the act, declared not "*to extend to trusts arising or resulting by implication of law*." We have already said that we regarded the deed in question as creating a resulting trust, the bank having furnished the funds which constituted the consideration of the conveyance. That deed itself is not in evidence; and the recital contained in the deed of the 15th of August, 1843, does not necessarily show that the trusts therein mentioned were *expressed on the face of the conveyance.* If the conveyance of the 4th of December, 1839, created a *resulting trust*, it conveyed the *entire estate* in the land to Dana, by virtue of the 51st section, subject only to the provisions of the 52d section of the act. And it seems to me reasonable to hold; that, if the plaintiff had intended to insist that the trust arising on the deed in question was *not* a *resulting trust*, and that the deed was so framed as to bring it within the provisions of the 47th and 48th sections of the act, thus conveying the *legal title*, as well as the *beneficial interest* in *the premises, to the bank*, he should *have put that deed in evidence.* As already intimated, the recital in the tripartite deed of August, 1843, may well be construed to express the trust which the parties recognized as being raised by the deed; rather than the actual provisions of the instrument. In a case where the words actually employed by the parties to the deed are so important, nothing should be left to an implication arising from an uncertain recital contained in another conveyance. And, especially would it be wrong to hold it proved by the recital that the absent deed conveyed a *legal estate* to the bank, when the recital itself declares that the *legal title* was conveyed to the nominal grantee Dana, and when the deed in which the recital is found is entirely irreconcilable with the idea that the bank held the legal estate in the premises. That absent deed, if produced, might be found to express either no trust at all upon its face, or if it created express trusts, the same might be valid under the provisions of the fifty-fifth section of the act. I shall therefore assume for the present that the deed executed by Dennis to Dana created a resulting trust, and that by virtue of the 51st section of

the act before cited, Mr. Dana took the whole interest in the premises, subject to the provisions of the 52d section.

I. It will follow, therefore, that to entitle the plaintiff to recover, he must bring himself within the provisions of that section, which reads as follows : " Every such conveyance shall be presumed fraudulent as against creditors, *at that time,* of the person paying the .consideration ; and where a fraudulent intent is not disproved, a trust shall result in favor of such creditors *to the extent that may be necessary to satisfy their just demands.*" It is apparent that the plaintiff, in the attempt to bring the case within this section, is met by several grave difficulties.   (1.) There is no satisfactory proof that the plaintiff was a creditor of the bank on the 4th of December, 1839.   The only evidence of that fact is that his claim was founded on bank notes of all denominations bearing various dates from 1835 to 1841.   Now it nowhere appears, *when* the plaintiff received any one of these notes ; nor *when* they were put forth by the bank. Their dates furnish *no satisfactory evidence* of this fact; for, judging by the well known practice of banking institutions, it is quite as probable as otherwise, that all the bills bearing date before the execution of the deed, had been, after their first issue, returned to the bank and re-issued to customers, in the ordinary course of banking business, after the 4th of December, 1839. If, therefore, it be assumed that the rights of the numerous former holders of these bank notes, as creditors, under the section in question, have been transmitted to the plaintiff, the case is still without adequate proof that any one of these notes was actually issued and outstanding on the 4th of December, 1839. (2.) Again, if this difficulty were obviated, we have no evidence to show how large a portion of the indebtedness which constituted the plaintiff's judgment arose upon notes bearing date *before* the execution of the deed.   It is a part of the case that *some* bore date in the years 1840 and 1841.   Now, confessedly, as to that part of the judgment founded on notes of this description, the statute gives the plaintiff no *lien* upon, nor *rights* against, the land conveyed to Dana.   It is therefore entirely uncertain whether the trust which results to the plaintiff attaches

to the premises in question to the extent of one dollar or one thousand. (3.) The presumption of a fraudulent intent may be *disproved* by the very terms of the act. (*See* § 52, *and* 10 *Paige*, 570.) And it may well be argued, that the presumption of fraud is "*disproved*" by the circumstances under which the deed was given, the trustee being the attorney of the bank, and the bank a foreign corporation; and the absence of any proof of embarrassment existing at the time which would render a fraudulent intention to place its property in the name of other parties fairly presumable against the bank. (4.) It can hardly be admitted that under the provisions of the 52d section of the act, the title of Dana could be divested by an execution sale for the satisfaction of the *whole judgment*, when it is manifest that the land is liable for only a part of it. By the very terms of the statute, "a trust results in favor of *all the creditors*" of the person paying the consideration. It does not make the conveyance void *in toto*, as the statute of frauds does; but only *pro tanto*, to the extent that may be necessary to satisfy the just demands of such creditors. It is not therefore a case where one creditor can get a judgment at law for an indebtedness, a part of which arose after the conveyance—and by a sale for the satisfaction of the *whole judgment*, transfer the title of the whole of the premises embraced in the conveyance. On the contrary, the creditors must seek their remedies in equity, where alone the rights of all parties can be properly adjusted. And so I understand the chancellor to hold, though for another reason, which will be mentioned hereafter, in the 10*th Paige*, 567 *to* 571.

II. Suppose, however, that I am mistaken in regarding the entire estate in the premises, both legal and equitable, vested in Dana under the deed from Dennis, by virtue of the 51st section of the statute before cited. Admitting that the plaintiff is *estopped* by the tripartite deed of August, 1843, from denying that the bank held a beneficial interest in the premises—still it was a *beneficial interest* ONLY. It was not the *legal estate ;* for *this*, the same instrument which is made the foundation of the supposed estoppel, expressly declares. Nor is this at all

improbable ; for the deed of December, 1839, as has been already suggested, may have created a trust estate, valid under the 55th section of the act, in Dana, while the beneficial estate was in the bank. But there can be but little doubt that the bank furnished the entire purchase price of the premises—and it has been supposed by the counsel of the plaintiff, that such an interest is subject to execution and attachment. It is indeed enacted, (2 *R. S.* 368, § 26,) that lands, &c. held in trust or for the use of another shall be liable to debts, judgments, executions and attachments against the person to whose use they are holden ; but it is nevertheless expressly stated that this liability is to be made effectual by the provisions contained in the first chapter of the second part of the revised statutes, the very provisions we have been considering. So too, formerly, where there was a resulting trust, the *cestui que trust* having furnished the consideration money for the land, such interest of the *cestui que trust*, though an equitable estate, might be sold on execution. But that was done by virtue of the statute, 29*th Charles* 2, *ch.* 3, § 80, adopted in this state in 1 *R. L.* 1813, *p.* 74, § 4. No such provision, however, is found in the revised statutes, or has been enacted since. Of course, such an interest, that is, the beneficial interest of a *cestui que trust* of lands cannot now be sold on a judgment and execution at law. (*See* 10 *Paige*, 567 *to* 571, *before cited* ; 3 *id.* 481 ; 4 *id.* 578 ; 17 *John. Rep.* 352 ; 18 *Wend.* 248, 9.)

III. I have thus far regarded the plaintiff as having proceeded under the provisions of the revised statutes in seizing and selling the premises in question as the *legal estate* of the Bank of Towanda. By the act of 1842, however, (*Sess. Laws of* 1842, *p.* 227,) provision was made for seizing trust property, real and personal, in proceedings by attachment against foreign corporations. But it is provided in the 2d section of this act that when a party seeks to attach trust property, he must execute the attachment by " *leaving a true and attested copy of the writ with the trustee.*" This mode of service is prescribed by the statute, for the best of reasons. The trustee being within the jurisdiction of the state can be reached by personal ser-

vice. He is moreover the representative of the beneficial owner of the property, and may be interested as well as the *cestui que trust* in the defence of the suit. Should he omit to defend the suit, or to give notice of its commencement to the beneficial owner of the property, he would probably incur a liability over to such owner, for all damages suffered by his omission to do so. Such a service is the most effectual mode of notifying the party most deeply interested in the defence of the action. Hence the propriety of requiring a personal service of the process on the trustee. It is the policy of our law that no man shall be divested of his property without a notice of the proceeding by which that object is sought to be accomplished. He is entitled to his day in court to answer his adversary. And when a personal service is possible, and when the statute has prescribed that mode of service of process as the commencement of any legal proceeding, the directions of the statute must be obeyed, or the court or officer does not acquire jurisdiction over the person of the defendant. (*See* 15 *John. Rep.* 141; *Cowen and Hill's Notes*, 998; 5 *Wend.* 156.) If I am right in this conclusion, the service of the attachment was not such as to give the plaintiff any rights under the act of 1842.

But suppose this conclusion to be erroneous, and that the plaintiff did obtain a lien, by the service of his attachment, upon the equitable interests of the bank in the premises; and that he acquired by purchase, at the sale upon his execution, the precise interest which the bank held when the attachment was served; yet by the very terms of the act (*see* 2d *subdivision of* § 4 *of the act of* 1842,) the sheriff could convey to him only an equitable interest; the precise interest which the bank itself possessed when the process was served. He, therefore, has not yet acquired the *legal estate;* and without that, he cannot succeed in this action.

We have not examined the questions arising upon the assignment of the mortgage mentioned in the case, believing, that for the reasons already given, the defendant is entitled to judgment.

Judgment for the defendant.