Wright *v.* Douglass.

---

---

SAME TERM.    *Before the same Justices.*

### WRIGHT *vs.* DOUGLASS.

In October, 1837, the Towanda Bank recovered a judgment against E. J. Dennis, under which the land of Dennis was sold by the sheriff, on the 6th of June, 1838 ; the bank becoming the purchaser and receiving a certificate of sale from the sheriff. On the 30th of October, 1839, the bank, by an instrument in writing, for a valuable consideration, assigned the sheriff's certificate to A. Dana, conveying and releasing to him all its right, title and interest of, in and to the land, and authorizing and requiring the sheriff to

Wright  v.  Douglass.

convey the same to him.    Dana, thereupon, attempted to procure a deed from the sheriff; but the latter being absent from home, Dana accepted a deed of the premises from Dennis, dated December 20, 1839, in lieu of the sheriff's deed, upon the assurance of Dennis, that there were no intermediate incumbrances.    The sheriff, subsequently, conveyed the premises to the plaintiff, a judgment creditor of the bank.

*Held*, 1. That the parties might lawfully, by agreement, substitute the deed of the judgment debtor instead of that of the sheriff.

2. That such substitution virtually subverted the sheriff's sale, and divested that officer of all power to convey the premises for the benefit of a third person.    And that, consequently, the conveyance from the sheriff to the plaintiff was void.

3. That the *equitable title* to the premises being in Dana, by virtue of the assignment of the sheriff's certificate to him, by the bank, and the deed from the judgment debtor conveying the naked *legal title*, the equitable and legal titles thus became united in him, and constituted a perfect title to the premises.

4. That no stranger could object to the validity of the conveyance from the sheriff to Dana.

5. That after the interest of the bank, in the premises, had been transferred to Dana by the assignment of the sheriff's certificate, and he had acquired the legal estate, by his conveyance from Dennis, the bank had no remaining interest in the property, capable of being levied on by attachment in favor of a creditor.

The provision in the act concerning moneyed corporations, which declares that no conveyance, assignment or transfer of any effects for the use, benefit or security of any *such* corporation shall be valid, unless made to the corporation directly, refers to moneyed corporations chartered by our own legislature, and has no reference to corporations chartered by a foreign state.

And if land is conveyed in trust for the benefit of a *foreign* corporation, the corporation will only incur the penalty of not being able to *maintain an action* on the deed.    The conveyance will be good for all other purposes.

A creditor purchasing property at a sale upon an execution issued in an attachment suit commenced by him, can not claim to be a *bona fide* purchaser from the time of the levying of the attachment; but only from the time of the purchase at the sheriff's sale.

To constitute a person a *bona fide* purchaser, he must have *advanced the consideration for the purchase*.    It will not constitute a bona fide purchase, that the creditor bids off the premises and applies the bid on his judgment.    That is a precedent debt, and the consideration is not *advanced* on the faith of the purchase.

Acting under bad advice in the adoption of an erroneous proceeding, will not *estop* a party.

An *estoppel*, to be binding, must be reciprocal and binding on both parties; and the acts relied on as an estoppel, must have been intended to have, and

Wright *v.* Douglass.

have actually *had* an influence on the conduct of him who asserts the estoppel.

Under the act of 1842, relative to proceedings by attacnment against foreign corporations, by which provision is made for seizing the trust property of such corporations, in this state, the attachment must be served upon the trustee, otherwise the whole proceedings will be void for want of jurisdiction.

In respect to a court of general jurisdiction, it is to be presumed that the court had jurisdiction, *till the contrary appears.* But the want of jurisdiction may always be shown by evidence, except when jurisdiction depends upon a fact *that is litigated in a suit, and is adjudged* in favor of that party who avers jurisdiction. Then the question of jurisdiction is judically decided, and the judgment record is conclusive evidence of jurisdiction, until set aside, or reversed, by a direct proceeding by appeal, or a writ of error.

Where, after the decision of a cause by the supreme court, a new trial is ordered by the court of appeals, and upon the second trial new evidence is introduced, which removes the principal ground of the decision in the court of appeals, the supreme court will be at liberty to declare the same judgment which it rendered on the former occasion.

THIS cause, as it was presented when it first came before the court, is reported in 3 *Barb. Sup. C. Rep.* 556, with the judgment of the court thereon. That judgment having been reversed, and a new trial granted by the court of appeals, (*see* 2 *Comst.* 373,) a new trial was had at the Oswego circuit in February, 1850, before Gridley, justice. The facts appearing upon the second trial, will be found stated in the opinion of the court. A verdict was taken for the plaintiff by consent, subject to the opinion of this court, upon a case, with liberty to either party to turn the case into a special verdict or bill of exceptions.

*John A. Collier,* for the plaintiff.

*B. Davis Noxon,* for the defendant.

*By the Court,* GRIDLEY, P. J. When this cause was before the court, at a former term, we assumed, without any very distinct evidence of the fact, that the deed of the premises, executed by Eben J. Dennis to Amasa Dana, dated on the 4th of December, 1839, was delivered to the grantee and accepted by

Wright *v.* Douglass.

him, with the knowledge and assent of the Towanda Bank, the entire consideration for the deed having been advanced by that corporation. Acting on this assumption, we regarded the whole interest in the premises, legal and equitable, as vesting in Mr. Dana, by virtue of the 51st section of the statute concerning uses and trusts, subject only to the rights of the creditors of the person paying the purchase money, at the time of the execution of the deed, as provided by the 52d section of the act. (1 *R. S.* 728, §§ 51, 52.) We then held that the plaintiff not having proved himself a creditor of the Towanda Bank, at the time of the execution of the deed, and not having taken the requisite proceedings to subject the property to the trust *created* by the statute in favor of creditors, had failed to establish a right in himself to the premises. It followed as a direct consequence, from this conclusion, that the deed executed by the sheriff of the county of Oswego to the Towanda Bank, bearing date on the 16th day of December, 1845, and produced by the plaintiff as an essential link in his chain of title, was *void* for *two reasons.* The first ground upon which it was held void was, that the deed executed by Eben J. Dennis to Amasa Dana, having been delivered in lieu of the deed of the sheriff, by the agreement of all the parties interested in the premises, virtually subverted the sheriff's sale, and divested that officer of all power to convey the premises for the benefit of a third person. The second ground was, that all the interest of the bank in the premises having been conveyed to Mr. Dana by consent of the bank, before the levy of the plaintiff's attachment, the plaintiff acquired no rights by that levy, and the subsequent sale; and therefore no power to *accept* the sheriff's deed in behalf of the Towanda Bank.

The court of appeals, however, took a very different view of the deed executed by Dennis to Amasa Dana, and of the rights of the parties affected by it. That court adopted the hypothesis, that the deed executed by Dennis to Dana, was so executed by virtue of an agreement between those parties, without the knowledge of the bank, and was not intended to convey the equitable interest of the Towanda Bank, but only the empty nominal title

Wright *v.* Douglass.

of Dennis, after all right of redemption had expired. Such a conveyance would be subject, of course, to be defeated whenever a title should be perfected under the certificate of sale of the premises by the bank, or any party lawfully succeeding to its rights. Upon this theory, the deed to Dana would not affect the interest of the Towanda Bank. That interest having been levied on by attachment and purchased by the plaintiff, became a perfect legal estate, by virtue of the sheriff's deed, embracing the title both of the bank and of Dennis, the judgment debtor.

The additional evidence, given on the second trial, has proved the hypothesis of the court of appeals, on which its decision was founded, to be erroneous; and established the facts in relation to the deed executed by Dennis to Dana, as they were assumed to be by this court. It now appears that on the 30th day of October, 1839, the Towanda Bank, by an instrument in writing executed under its corporate seal, for a consideration of $1600, assigned the sheriff's certificate of the sale of the premises in question to Mr. Dana, " conveying and releasing to him all their right, title and interest of, in and to the said land, and authorizing and requiring the sheriff to convey the same to him, his heirs and assigns, in pursuance of said certificate." That on the 16th of November, 1839, Mr. Dana (being about to leave home for the city of Washington as a representative in congress,) executed a power of attorney to Jonathan B. Gosman to demand and receive a sheriff's deed of the premises; to take possession of the farm; to sell and dispose of the same, or to rent it or make such other disposition of it as he might think advisable. That Mr. Gosman, in pursuance of this power of attorney, went to the county of Oswego to take a deed from the sheriff; that on arriving there he found the sheriff absent; and on the solemn assurance of Dennis that there were no intermediate incumbrances on the farm, he accepted a deed from Dennis, in lieu of the sheriff's deed, which is the aforesaid conveyance dated the 20th of December, 1839. It further appeared that the consideration of this deed was the sum for which the farm had been bid off, and that the Bank of Towanda and Mr. Dana were notified by Mr. Gosman, on his return to the county of Tioga,

Wright *v.* Douglass.

of what he had done, and they approved of his acts, and affirmed the deed. The reason why the deed was taken to Mr. Dana, instead of the bank, was that the bank desired to sell the premises; and this was deemed by the bank the easiest and most expedient way of transmitting the title to a purchaser.

The question now arises, as it did before, what interest did Amasa Dana take under this deed?

I. We think, (unless some of the objections raised by the plaintiff's counsel to the deed, are found to be tenable,) the question is answered by the provisions of the statute. The 51st section of the act before cited provides as follows; "where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, *no use or trust shall result* in favor of the person by whom such payment shall be made; but the title shall vest in the person named as alienee in such conveyance, subject only to the provisions of the next section." By the 52d section the conveyance is declared fraudulent as *against the creditors at that time* of the person paying the consideration; and a trust results to such creditors, to the extent that may be necessary to satisfy their just demands. The 53d section provides that the 51st section shall not extend to cases where the alienee shall have taken the same in his own name without the consent or knowledge of the person paying the consideration. We have already seen that neither the 52d nor the 53d sections are applicable to this case, as the plaintiff has not shown himself a creditor, *at the time;* and the deed was taken in the name of Dana, with the knowledge and consent of the bank. The case therefore falls directly within the provisions of the 51st section before cited. It was clearly within the power of the legislature to abolish resulting trusts, as it has done in the section of the statute under consideration. Whether it was wise to do so, is a very different question, and one with which we have no concern. Those who desire to know the reasons of this enactment will find them in the revisers' notes to the 51st, 52d and 53d sections of the act. (*See* 3 *R. S.* 585.)

We will now examine the objections which the defendant's

counsel has urged against applying the rule contained in the 51st section of the act to the deed under consideration.

(1.) It is said that the judgment debtor, whose land has been sold on execution, and the time for redemption has expired, has no power to convey the title to a third person; that his interest is irrecoverably gone, and even his equitable right to redeem has expired. This proposition we may admit, in its fullest terms. The judgment debtor has no power to convey even the naked legal title in hostility to the rights of the person holding the certificate of sale. The judgment debtor in this case, Eben J. Dennis, held the legal title. Mr. Dana held the equitable title by assignment from the bank, after the time for redemption had expired. In order to superadd to that the naked legal title of the judgment debtor, the law had provided that the sheriff who made the sale should execute the deed. Now suppose the *parties*, by agreement, substitute the deed of the judgment debtor, instead of that of the sheriff. What possible defect can there be in the title conveyed, if there be no intervening incumbrances? Dana had all but the naked title, already; and the judgment debtor consents to *release* to him *that*. The equitable and legal titles are thus united in Mr. Dana; and *no stranger* can object to the validity of the conveyance. By executing the deed himself the judgment debtor, Dennis, adopts the sale previously made by the sheriff, as though it had been made by himself. He elects to consider the sum bid by the bank, and the extinguishment of so much of the judgment of the bank against him, as the purchase price and consideration of the premises; and he, by executing the deed, transfers to the grantee the naked legal title, which was all that remained to him, and all that was necessary to the grantee, to consummate in himself a perfect title to the premises. The rights of the parties thus became strongly analogous to those of a vendor and vendee of real estate, after the purchase money is paid up. Suppose the bank to be the holder of a contract from Dennis, for the premises, upon which the entire purchase price had been paid. No one can dispute the power of the bank to assign this contract; nor that the assignee would be vested with the equi-

table title to the land. And when Dennis had conveyed the title to the assignee, it is equally clear that the assignee would possess the entire and perfect title, legal and equitable, to the premises. So in the case now under consideration, Dana was, by the assignment of the certificate, vested with the clear equitable title to this land. Dennis still held the nominal legal title, and when he released *that,* to Dana, the title in Dana became perfect. It is true that such an arrangement *may* be adopted to defraud creditors; but where no such case exists, and no such question is raised, it seems to me that an objection to the want of capacity in the parties to convey a perfect title, by means of a deed from the judgment debtor, has no solid foundation. If we are right in this conclusion, there was no interest in the Towanda Bank, capable of being levied on, when the attachment was served. That interest had been transferred to Mr. Dana on the 30th of October, 1839, by an absolute assignment of the sheriff's certificate. This instrument was unconditional in its terms, conveying all the right and title of the bank in the premises. And no fraud, mistake, or surprise is either averred or proved, in the frame or character of this paper, by which any trust in favor of the bank can be raised, out of its provisions. (2 *R. S.* 137, § 2. *Moran* v. *Hayes,* 1 *John. Ch.* 339. *Jackson* v. *Jackson,* 5 *Cowen,* 173. *Patchin* v. *Rice,* 12 *Wend.* 61. 7 *Hill,* 361, *and cases there cited.*) In addition to this equitable title, Mr. Dana acquired the legal estate by his conveyance from Dennis, on the 4th of December, 1839, leaving no interest of the bank on which the attachment could be levied.

(2.) It is argued that Mr. Dana, having acquired this estate as the attorney of the bank, under a deed which placed the rights of the bank at his mercy, would not be permitted to hold it against his clients. And the case of *Howell* v. *Ransom,* reported in Kinney's Compendium of January, 1843, and also in 11th of Paige, 538, is cited, to show with what scrupulous jealousy the courts watch all proceedings between attorney and client. One answer to this argument is, that neither the Bank of Towanda, nor any party representing its interests, has ever

Wright *v.* Douglass.

sought to set aside this deed. In the first place, Mr. Dana took the deed at the request of the bank ; and afterwards, when the bank desired him to convey the premises to an honest creditor, Mr. Dana united in the conveyance. Had Mr. Dana refused, on request, to convey the premises to the bank, or according to its directions, it is possible that the court of chancery might have interfered on this principle ; but not on the ground of any interest which the bank had in the premises. But the right of the bank to do this, at a former period, and under a state of facts that never existed, is a very different thing from the right of this plaintiff to object, in this collateral way, to the disposition of property made long ago, at the request of the bank, and to which he is an utter stranger. (*See* 1 *Story's Eq. Jur.* § 310, *note, and* § 311 *to* § 314.) But Dana was not the attorney of the bank. His authority as such ceased with the issuing of the execution on the judgment against Dennis, on the 23d of October, 1837. (*See Rolle's Ab.* 295, *pl.* 25. 8 *John.* 361. 10 *Id.* 210.) The taking of the deed in question was a distinct and independent act, performed at the request of the bank. Even the assignment of the certificate was more than two years after execution issued.

(3.) It is insisted that the deed is rendered invalid by the provisions of the act concerning moneyed corporations, which declares that no conveyance, assignment, or transfer of any effects, for the use, benefit or security of any *such* corporation shall be valid unless it be made to the corporation directly. (1 *R. S.* 591, § 7. *Id.* 599, § 54.) It is perhaps a sufficient answer to this objection that the phrase " *such corporation*," as used in the act, refers to moneyed corporations chartered by our own legislature, and has no reference to corporations chartered by a foreign state. But it is provided (*in* 2 *R. S.* 457, § 2,) " that where by the laws of this state any act is forbidden to be done by any corporation, &c., and such act shall have been done by a foreign corporation, it shall not be *authorized to maintain any action founded on such act,*" &c. If the statute had forbidden " *any corporation*" to take a conveyance of effects, &c., except to *itself directly*, this last act would have been applica-

ble to the case under consideration. And then the extent of the enactment would have been to prevent the Bank of Towanda from *maintaining an action of ejectment, on this deed.* By the act (2 *R. S.* 328, § 77) concerning evidence, it is enacted that " in every action upon a sealed instrument, and where a set-off is founded on a sealed instrument, the seal shall only be presumptive evidence of a consideration." Now under this statute it has been held that in every case except where " a *suit is brought on a sealed instrument,* or a sealed instrument is the foundation of a set-off," a seal is *conclusive* evidence of a consideration. (11 *Wend.* 107. 5 *Denio,* 308.) By precisely the same reasoning, the foreign corporation will only incur the penalty of not being able to maintain an action on the deed; but the deed will be good for all other purposes. In this case the bank is not seeking to maintain an action on the deed; but the deed has served its purpose, and the premises have long since been conveyed by Mr. Dana in compliance with the directions of the bank. The case of the *New-Hope Delaware Bridge Co.* v. *The Poughkeepsie Silk Co.* (25 *Wend.* 648,) is not an authority against the defendant. The plaintiffs, a foreign corporation, sought to recover for money lent in violation of the restraining act. (1 *R. S.* 708, §§ 6, 7.) It is to be observed that the prohibition was general, upon " *all persons,*" (except such associations as were authorized by law) from keeping an office for discounting notes, &c., and in this respect it differs from the 7th section of the act (1 *R. S.* 591) concerning moneyed corporations. Again; the very ground of the recovery sought was founded on an act prohibited by law. (*See* 7 *Wend.* 276; 17 *Id.* 173.)

(4.) It is contended that inasmuch as the deed from Dennis to Dana was not recorded, the plaintiff, when he purchased on the judgment obtained in the attachment suit, in 1844, was a *bona fide* purchaser. The counsel for the plaintiff argued as though the levy of his attachment was in the nature of a purchase; but that idea can not be supported. It was only when he purchased the premises, on his execution, that he can claim to be regarded as a purchaser at all. But I do not think he

can be regarded as a bona fide purchaser, for two reasons. 1st. To constitute a bona fide purchaser he must have *advanced the consideration for the purchase.* It will not constitute a bona fide purchase that the creditor bids off the premises and applies the bid on his judgment. *That* is a precedent debt, and the consideration is not *advanced* on the faith of the purchase. (1 *R. S.* 746, §1. 4 *Paige,* 215. 20 *John.* 637.) 2d. I am constrained to say that the plaintiff had notice enough to put him on inquiry, if not to charge him with a knowledge of the defendant's title. The tripartite deed was on record when he purchased at the execution sale. *That* was enough to put him on inquiry as to the exact terms of the deed from Dennis to Dana. Again, it is fair to conclude that the defendant or some one under whom he claimed was *in possession.* The defendant was in possession at the commencement of this suit. When did he acquire the possession ? Most probably when he took the tripartite deed. This is rendered probable from the power of attorney to Gosman, authorizing him to take possession of the premises, as well as to take a deed. And he testifies that he had the exclusive charge and management of the premises from the time of the execution of the deed to Dana; and that while Dennis remained in possession he occupied in the character of a tenant at will. (*See Tuttle* v. *Jackson,* 6 *Wend.* 213, *and cases cited by the chancellor, from page* 225 *to* 228.)

(5.) Again ; it is urged that the defendant is estopped from denying that Mr. Dana held the premises in trust for the Bank of Towanda, by the recitals in the tripartite deed, and by the abortive attempt to get a lien on the property by a proceeding by attachment. The *defendant,* to whom that deed was given, might well say that Mr. Dana was estopped from denying that fact, in a suit where the latter was asserting his right to deny it. But Mr. Dana is not a party here. Nor has he ever refused to perform the trust which he assumed in *fact,* though it was not recognized by *law.* The plaintiff is neither a party nor a privy in blood, estate, or in law, to Mr. Dana. (*Jackson* v. *Parkhurst,* 9 *Wend.* 209. *See also Jackson* v. *Brinckerhoff,* 3 *John. Cas.* 101 ; 2 *John. Rep.* 382.) Again, I do not think

that acting under bad advice in the adoption of an erroneous proceeding has ever been held to estop a party. The estoppel, to be binding, must be reciprocal, and binding on both parties; and the acts relied on as an estoppel must have been intended to have, and have actually *had* an influence on the conduct of him who asserts the estoppel. (8 *Wend.* 480.)

These are all the objections which the acute and ingenious counsel of the plaintiff has been able to raise, against the effect of the deed of the 4th of December, 1839. And if these objections are found to be unsound, then nothing remains for us but to declare the title to be in Mr. Dana, in obedience to the 51st section of the act before cited. It is not a question before us what Mr. Dana was *bound to do* with the premises, as an honest man; nor whether a court of chancery would, at the instance of the Bank of Towanda, have set aside this deed, though taken by Mr. Dana at its own request; had a bill been filed before he had conveyed away all his interest, by the tripartite deed, in payment of a just debt of the bank. But we are bound to declare what interest the law adjudged Mr. Dana to possess in the premises, at the time when the plaintiff levied his attachment. The plaintiff and the defendant were both creditors of the Towanda Bank; both were seeking to obtain the title to this farm; and the rights of the plaintiff depend on his being able to make out that the Towanda Bank had a legal, or at least an *equitable* interest in the premises, which was capable of being levied on and sold under execution, at the time when the attachment was served. (6 *Hill*, 362.)

For the reasons above given, and those contained in the opinion delivered when the case was before us on a former occasion, (3 *Barb. Sup. C. Rep.* 554,) we believe that the bank had no *legal* or *equitable* interest in the premises, at that time. We think that the *assignment of the certificate* to Mr. Dana, alone, being absolute, would divest the bank of all interest in the premises; and more especially when that assignment ripened into a perfect legal title, under the deed of the 4th of December, 1839, which was transmitted to the defendant by the tripartite deed on the 15th of August, 1843.

II. But suppose (for the sake of the argument) that Mr. Dana actually was vested with a trust estate belonging to the bank, in spite of the statute. Then the question arises, whether the attachment was served in such a manner as to give the court jurisdiction over the person of the defendant in that suit. Granting that equitable interests were a subject of levy, under the revised statutes, (2 *R. S.* 449, §§ 15, 16; 368, § 26,) yet, when the defendant is a foreign corporation, the old mode of service will not answer now. In 1842 an act was passed "to amend the law in relation to suits against foreign corporations." (*Laws of* 1842, *p.* 227, 8.) By the first section of that act "all trust property, real and personal," was declared to be liable to be attached in actions at law, and subjected to sale on execution to satisfy any judgment obtained in the suit. The next section prescribes the mode of serving the attachment in cases falling within the scope of the enactment, in these words: "The execution of the attachment upon any such rights or shares or trust property, &c., shall be made by leaving a true and attested copy of the writ by the officer serving the same, with the proper indorsement thereon, with the cashier of such bank, or with the secretary or clerk of such insurance company or other corporation, or with *such individual holding such trust property*, and then such trust property shall be held to respond to the judgment and to satisfy such execution." The third section makes it the duty of the officer or individual holding such "*trust property*," on application, to furnish a description of the amount and nature of the trust property, so holden for such foreign corporation. The fourth section provides for the satisfaction of the judgment out of the trust property; 1st, by paying over the proceeds of all sales of perishable property, vessels, &c.; 2dly, by selling on execution so much of the attached property, "*real and personal*" as may be necessary to satisfy the execution, and by the execution of "*a deed* or *bill of sale*" to the purchaser, as the nature of the property sold may require.

On the argument, the counsel for the plaintiff indulged in a criticism of this act, founded on an obviously erroneous punctuation, by which the phrase "*trust property funds*" was read to-

Wright *v.* Douglass.

gether, instead of being separated into distinct clauses, as "trust property, funds," &c. He contended that by this reading it was manifest that trust property in real estate was not within the meaning of the act. But it seems to me that it is impossible to read the several clauses of the act, which expressly include real estate, and provide for the sale and conveyance of it by the sheriff, and to entertain a doubt on this point. (*See Camp* v. *The Lumberman's Bank,* 4 *Hill,* 39.) We think it, therefore, quite clear, that if Mr. Dana held the premises in trust for the Towanda Bank, it was indispensable that the plaintiff should have served the process on him. He had been the attorney of the bank, in obtaining the judgment against Dennis, and an inquiry of Dennis, or of any occupant of the farm, or of Mr. Dana, would have furnished him with evidence of the trust, and of the fact that Mr. Dana was the trustee.

I have already, in the opinion before alluded to, (3 *Barb.* 574, 5) given the reasons which led me to the conclusion, that this defect in the service of the attachment rendered the whole proceedings void for ·the want of jurisdiction. I desire now to add to the authorities cited on that occasion, the case of *Bloom* v. *Bradish,* (1 *Hill,* 138 *to* 143,) where Mr. Justice Bronson delivers an elaborate and learned opinion on this very point. He says: " It is a cardinal principle in the administration of justice, that no man can be condemned, or divested of his right, until he has had an opportunity of being heard. He must, by the service of process, publication of notice, appointing a guardian, or in some other way be brought into court; and if judgment is rendered against him before that is done, the proceeding will be utterly void, as though the court had undertaken to act when·the subject matter was not within its cognizance." He proceeds to say, "This is the rule in relation to all courts, with only this difference, that the jurisdiction of a superior court will be presumed *till the contrary appears ;* whereas an inferior court must show that it had jurisdiction." He subsequently remarks, " The distinction between superior and inferior courts, is not of much importance in this case; for whenever it *appears* that there was a want of jurisdiction, the judgment will be void, in what-

Wright *v.* Douglass.

ever court it was rendered." It is denied by the counsel for the plaintiff, that want of jurisdiction can be shown, collaterally, to defeat a judgment of a court of general jurisdiction. The true rule, however, is that laid down in the opinion just cited : that in a court of general jurisdiction, it is to be presumed that the court had jurisdiction, *till the contrary appears ;* but the want of jurisdiction may always be shown, by evidence, except in one solitary case, to which I will soon advert. (*See Starbuck* v. *Murray,* 5 *Wend.* 148; *Mills* v. *Martin,* 19 *John.* 33; 3 *Wend.* 267; 1 *Saund. Rep.* 73, 74, 75; 4 *Cowen* 292; 6 *Wend.* 447.) But when the jurisdiction depends on a fact that is litigated in a suit, and is adjudged in favor of that party who avers jurisdiction, then the question of jurisdiction is judicially decided, and the judgment record is conclusive evidence of jurisdiction, until set aside or reversed by a direct proceeding by appeal or a writ of error. (*Bell* v. *Bagly,* 12 *Pick.* 572, 582, 3.)

In this case, notwithstanding the statement in the record of judgment in the attachment suit, "that the said attachment had been duly served and returned according to law," &c.; it was made to appear, by the proof of the attachment, the order, and the return to the attachment, set forth at folio 11 of the case, that the attachment was not served on the trustee. The plaintiff undertook to give in evidence the proceedings, embracing the attachment, the order of the commissioner, and the return of the sheriff, setting forth the manner in which he had served the process. There is in that record no evidence of the service required by the act of 1842. For this reason we are of opinion that the court never acquired jurisdiction in the cause; and that their proceedings in the suit were *coram non judice,* and void.

We have thus been led to the same conclusions to which we arrived before. And though we entertain the utmost respect for the opinion of the court of appeals; yet, when the new evidence in the cause removes the ground which was made the principal foundation of that opinion, we regard ourselves as at liberty to declare the same judgment which we rendered on the former occasion.          Judgment for the defendant.