## Bangs, receiver &c., *vs.* J. & M. McIntosh.

A receiver, or other party commencing a suit in the supreme court under a special authority, must state in his complaint that he has been duly appointed receiver &c., and if issue is taken upon that allegation, he is bound to make due proof thereof.

The section of the revised statutes, authorizing the property of an insolvent corporation to be sequestrated, and a receiver to be appointed, contains a special delegation of power over such corporations, to be exercised in a prescribed manner, and upon a particular state of facts; and like all cases of authority delegated by statute, affecting liberty or property, the prescribed form for obtaining jurisdiction of the person and the subject matter, must be strictly pursued.

The proceeding is not a continuation of the original suit, but is an original proceeding in the supreme court, as a court of equity, in which the presentation of the petition is the first step, and is the act which confers jurisdiction.

Before the court can lawfully order the sequestration, and appoint a receiver, it must have a petition from the *creditor in the judgment*, or his legal representatives, setting forth the due recovery of a judgment in a court of law, or decree in equity, with the due return of an execution thereon issued, unsatisfied, in whole or in part. This is essential to confer upon the court the slightest power or authority to proceed in the case.

A petition signed by, and in the name of *the attorney* for the judgment creditor, is not sufficient to confer jurisdiction; and an order made thereon, for the sequestration of the property of a corporation, and the appointment of a receiver, will be unauthorized and void.

And an order subsequently made by a judge at special term, granting leave to amend such petition, and an amendment in pursuance thereof, will not cure he defect, but will be merely adding another nullity to the prior nullity.

When the supreme court has acquired jurisdiction, it may amend any process or proceeding to retain it, and carry out and effectuate its object, in furtherance of justice. But it cannot make a void proceeding valid by an amendment in the same proceeding or matter.

And it is a fundamental rule, that where there is an absence of jurisdiction, the defect cannot be supplied by amendment or supplemental proceedings, so as to make the void proceedings valid from the beginning.

An assessment, made by the receiver of a mutual insurance company, upon the premium notes, is not complete and consummated until it is ascertained, fixed and determined, by carrying out upon the extension book the amount which each member is to pay.

And the notice of such assessment, if published before this is done, is premature.

The notice should state the amount which each member is to pay. Otherwise it will be insufficient and defective, and will not oblige the members to pay, or subject them to a suit upon the premium note.

Bangs *v*, McIntosh.

Upon a recovery on a premium note, for the non-payment of an assessment, the plaintiff is not entitled to interest on the amount of the note; the recovery for the whole amount being in the nature of a penalty.

THIS action was commenced March 4, 1853, by the plaintiff, as receiver of the Genesee Mutual Insurance Company, to recover, as a forfeiture, the whole amount of a premium note for $480, with costs, because of the non-payment of three assessments thereon, which in the aggregate amounted to $6.10. The plaintiff claiming such forfeiture under § 10 of the charter of the insurance company, (*Laws of* 1836, *pp.* 318, 42,) on the ground of failure to pay the assessments within thirty days after the notice mentioned in said section. The answer was a general denial, and also a statement of various irregularities in making up the assessments. The cause was tried at the Monroe circuit in April, 1856, before Justice WELLES, and a jury. The plaintiff proved that the defendants made and executed a promissory note, of which the following is a copy:

"$480. For value received in policy No. 13088, dated November 2, 1849, issued by the Genesee Mutual Insurance Company, we promise to pay the said company, or their treasurer for the time being, the sum of $480, in such portions and at such times as the directors of such company may, agreeably to their act of incorporation, require."

(Signed)        J. & W. McINTOSH.

And read the said note in evidence. He also proved that the defendants were partners at the time of the date of said note. The counsel for the plaintiff then introduced in evidence the act for the incorporation of "The Genesee Mutual Insurance Company," (*Laws of* 1836, *p.* 318,) and the act for the incorporation of "The Jefferson County Mutual Insurance Company," (*Id. p.* 42.) He also introduced in evidence the by-laws of the said company, and read by-laws Nos. 7 and 25, as follows: "§ 7. The executive commitee shall appoint the general agents, and determine their salaries, investigate and determine the amount of all claims presented against the company, audit all

Bangs *v.* McIntosh.

accounts and report to each annual meeting the proceedings of the previous year."

. " § 25. Notice of assessments shall be given by the secretary, by publication in two newspapers printed in the county of Genesee, for three weeks successively, the last publication of which shall be not less than 30 days previous to the time fixed for payment; and the directors may also cause such notice to be published in handbills, and posted up in such places as they may direct." The counsel for the plaintiff then proved the execution of the policy mentioned in the complaint, to the defendants. He also introduced in evidence a certified copy of a judgment roll in an action in the supreme court, wherein William Lafferty was plaintiff and the Genesee Mutual Insurance Company was defendant, in which H. Wilbur was the attorney for the plaintiff, and Lucius N. Bangs was the attorney for the defendant, and in which the plaintiff recovered judgment against the defendant, on the 29th day of July, 1851, for damages $1068.40, and costs $48.66, and which judgment was on that day docketed in the office of the clerk of the county of Genesee. The counsel for the plaintiff then introduced in evidence a certified copy of an execution issued on said judgment against the property of the defendant, to the sheriff of the county of Genesee, on the 29th day of July, 1851, and also the return of the sheriff upon said execution, that it was unsatisfied, made and filed in the office of the clerk of Genesee county, on the 6th of October, 1851. The counsel for the plaintiff then offered in evidence the following papers, viz: the petition of Harry Wilbur, entitled in the above mentioned suit brought by William Lafferty, in which the petitioner styles himself " the above named plaintiffs' attorney," and prays that the stock, property, things in action and effects of the Genesee Mutual Insurance Company, may be sequestrated, and that a receiver of the said company may be appointed. This petition sets forth the recovery of the judgment by Lafferty, the issuing of the execution, and the return thereof unsatisfied, and states that the company is in very embarrassed circumstances, and has been, for a long time. Also notice of presenting said petition, and motion that the prayer

thereof be granted ; and an order granted thereon, at a special term held by Justice Taylor, on the 7th of October, 1851, sequestrating the property, stock and effects of the Genesee Mutual Insurance Company, and appointing Lucius N. Bangs receiver. The plaintiff also offered in evidence, an order made at a special term in Monroe county on the 30th of May, 1853, by Justice SELDEN, amending the petition upon which the order for sequestration and a receiver was granted, by making it the petition of William Lafferty, the plaintiff in the suit in which the judgment against the company was recovered, instead of the petition of Harry Wilbur his attorney.

To this evidence, the counsel for the defendant objected. 1. That the application for the appointment of a receiver was irregular and void ; that since the code it could only be done by an action. 2. That if it was not necessary that it should be done by an action, it must be by a special proceeding for that purpose, and could not be done as a part of, or as a continuation of the action in which the judgment was recovered. 3. Mr. Bangs as the attorney for the defendant in the judgment, had no authority to make any admissions, or waive any rights of " The Genesee Mutual Insurance Company," in the proceedings for the appointment of a receiver. 4. The first petition was dated and sworn to a month before the return of the execution. 5. The application for the appointment of a receiver was not made by the judgment creditor, but by H. Wilbur, and the papers do not show that Lafferty had any thing to do with it. 6. The entitling of said petition in the action in which the judgment was obtained rendered it void for any purpose. 7. The amending of the petition, by the subsequent order, could not confer jurisdiction *nunc pro tunc.* 8. The certificate of the clerk to the above papers was defective, as he did not specify which of the " foregoing" the certificate related to, when there were several papers attached together.

The court overruled the objections, and admitted the said papers as evidence in the cause, to which the counsel for the defendants excepted.

Bangs *v.* McIntosh.

The counsel for the plaintiff then offered in evidence the bond of the said receiver, dated October 8, 1851.

The counsel for the defendants objected thereto, on the following grounds : 1. The condition of said bond was not in conformity with the provisions and conditions of the order appointing him receiver. 2. That it did not in its condition comply with 2 *R. S.* 468, §§ 66, 67. The court overruled the objections, and admitted the bond in evidence.

The counsel for the plaintiff then offered in evidence a petition of the receiver for leave to make an assessment, for the purpose of paying the losses and expenses of the company, and an order of the court, made at a special term on the 21st of May, 1852, granting the prayer of the petition. This evidence was objected to as incompetent to prove the regularity or validity of the assessments, but was received. The plaintiff also offered in evidence an order of the court, made at a special term, on the 16th of June, 1852, on the petition of the receiver, classifying the losses and liabilities of the company, and directing the levying of assessments on the premium notes for the purpose of paying losses and liabilities, and for the publication of notice of the assessments. The plaintiff proved the making of an assessment, in pursuance of this order, and the publication of the following notice thereof, in three newspapers published in the county of Genesee, viz :

" Notice is hereby given, that by virtue of an act of the legislature of the state of New York, passed March 19, 1852, entitled ' An act to facilitate the collection of debts against corporations,' and in conformity with an order of the supreme court, made at a special term thereof, held at the court house in the village of Warsaw, in the county of Wyoming, on the 16th day of June, 1852, by the Hon. JAMES MULLETT, I Lucius N. Bangs, receiver of the property and effects of the Genesee Mutual Insurance Company, have assessed the premium notes of the said The Genesee Mutual Insurance Company, for losses by fire upon policies of insurance issued by said company, and the incidental expenses of said company, the following rates per cent, to wit : On all of said notes in force on the 19th day

of March, 1851, on the large class notes, .0013, on the small class notes, .0033. On all of said notes in force on the 23d day of May, 1851, on the large class notes, .00288, on the small class notes, .0072. On all of said notes in force on the 26th day of August, 1851, on the large class notes, 00851, on the small class notes, .02127.        L. N. BANGS, *receiver.*"

June 16, 1852.

The counsel for the defendants objected to this evidence on the following grounds : 1. That there was no evidence that the sum which the defendants should pay as their share of the losses, &c. had ever been settled or determined, and that no valid assessment had been made at the time of the publication of said notice. That the mere fixing of the rate per cent upon which the assessment would be made, was insufficient. 2. That the said notice did not contain or specify the sum which the defendants were to pay. It was only of the rate per cent of an assessment to be made, and not a notice of the sum which had already been settled and determined as their share of the losses ; nor did it specify which class the defendant's note belonged to, or which of the two rates per cent it was to be assessed. These objections were overruled by the court, and the notice was admitted in evidence, to which the counsel for the defendants excepted. It was proved that in making the assessment, usually several losses of different dates, near together, were added together in one class, and assessed as of the time mentioned in schedule B, in the book of rates. It was admitted that this action was commenced March 4th, 1853. The counsel for the plaintiff then offered to prove the amount of interest on the sum unpaid on said premium note, to wit, on $360 from the 7th day of August, 1852, to which the counsel for the defendants objected on the ground that the plaintiff was not entitled to recover such interest ; which objection was overruled by the court, and the counsel for the defendants excepted ; and the amount of such interest was proven to be $93.35, making with the said $360 unpaid on said note, the total sum of $453.35. The evidence here closed, and the counsel for the defendants thereupon moved for a nonsuit on the follow-

Bangs *v.* McIntosh.

ing grounds : 1. That the incorporation and organization of the Genesee Mutual Insurance Company had not been proven. That there was no evidence that any affidavit had ever been made or filed, that any portion of the capital had been paid or secured. 2. That the proceedings for the appointment of the receiver were irregular and invalid, and the bond given by the receiver was void, for the particular reasons hereinbefore set forth in the objections of the defendants' counsel to the papers and proofs relating thereto. 3. That no assessment had ever been made, or notice of assessment given; that the mere ascertaining of the rate per cent and giving notice of that rate was insufficient. That to constitute a valid assessment, it was necessary to settle and determine the sum to be paid by each member; and to constitute a valid notice, it must specify such sum, and the name of each person who is to pay. 4. That at the time of the publication of the notice the sum which the defendants were to pay had not been settled and determined. 5. That said notice was also defective, as it did not even give the basis from which the defendants could make their own calculations. It did not state what notes were classified under the large class rate, or what in the small class rate. 6. The said assessment was void for including interest upon the losses up to a time subsequent to the making of the assessment, to wit, up to October 1, 1852, and also for including 10 per cent for future expenses; the receiver having no authority to make any assessments except to pay the debts of the company. 7. The assessments were also invalid for the reason that they were not made on the notes in force at the time when the losses occurred, which the assessments were to pay. 8. The assessments were void because the receiver added together several losses of different dates and included them in one assessment. 9. There was no consideration for the premium note, the policy being void; only three of the directors having approved of the application, or authorized the issuing of the policy, it was not binding on the company.

This motion was denied by the court, and the counsel for the defendant excepted. No other evidence was given in the cause, and the jury, under the direction of the court, rendered a ver-

dict for the plaintiff of $453.35; and the court thereupon ordered the exceptions taken in the cause to be heard at a general term, and in the mean time that judgment be suspended.

*S. Mathews,* for the plaintiff.

*J. L. Angle,* for the defendant.

*By the Court,* E. DARWIN SMITH, J.   A receiver or other party commencing a suit in this court under any special authority, must duly allege his authority in his complaint, and in a traversable form; (*Gillet, receiver, v. Fairchild,* 4 *Denio,* 80; *White, receiver, v. Joy,* 3 *Kern.* 83;) and if issue be taken upon such allegation, it must be proved on the trial, as much as any other traversable fact.   It was necessary therefore for the plaintiff in this action, to state in his complaint that he had been been duly appointed receiver, and as the proceedings on the trial assumed that such fact had been duly put in issue, he was bound to make due proof thereof.

I. The first point made by the defendant's counsel is, that the plaintiff did not prove his own appointment as such receiver. It is a fundamental principle that all courts and judicial officers must acquire jurisdiction before they can make any binding decision, or do any valid act.   The principle is no less applicable to this court than it is to all inferior courts or magistrates.   And the question of jurisdiction is at all times open to inquiry and investigation whenever and wherever any judicial act or determination is set up or sought to be enforced.   (*Borden v. Fitch,* 15 *John.* 121.   *Mills v. Martin,* 19 *id.* 33.   *Elliot et al. v. Piersol et al.,* 1 *Peters,* 328, 340.)   The question whether this court ever acquired jurisdiction to appoint the plaintiff receiver of the property and assets of the Genesee Mutual Insurance Company is distinctly raised and presented for our decision, and we cannot decline passing upon it.   The jurisdiction is claimed and was exercised under section 36 of chapter 8, title 4, part 3, page 463 of vol. 2 of the revised statutes, which is as follows: "Whenever a judgment at law or a decree in equity shall be obtained

against any corporation incorporated under the laws of this state, and an execution issued thereon shall have been returned unsatisfied in part or in whole, upon the petition of the person obtaining such judgment or decree or his representatives, the court of chancery may sequestrate the stock, property, things in action and effects of such corporation, and may appoint a receiver of the same." This statute conferred a new power upon the court of chancery. Jurisdiction over corporations was expressly disclaimed by Chancellor Sanford in the case of *The Attorney General* v. *The Bank of Niagara,* (*Hopkins Rep.* 354,) following the case of *The Attorney General* v. *The Utica Insurance Co.* (2 *John. Ch. R.* 371.) This decision in *Hopkins* was pronounced in March, 1825, and was followed in the ensuing month, April 24th, by the act "to prevent fraudulent bankruptcies of incorporated companies and to facilitate proceedings against them. (*Sess. Laws of* 1825, *chap.* 325, *p.* 448.) The fifth section of this act was the same in substance as the above 36th section. This section 36 contains a special delegation of power over insolvent corporations, to be exercised in a prescribed manner or form and upon a particular state of facts. Like all cases of authority delegated by statute affecting liberty or property, the *prescribed form* for obtaining jurisdiction of the person and subject matter must be *strictly pursued.*

In *Bloom* v. *Burdick,* (1 *Hill,* 141,) Judge Bronson says : " In every form in which the question has arisen, it has been held that a statute authority by which a man may be deprived of his estate must be strictly pursued ;" and in *Thatcher* v. *Powell,* (6 *Wheat.* 119,) Chief Justice Marshall says, " that a person or public officer with power to divest another of his property, *must pursue with precision* the course prescribed by law, or his acts will be invalid ;" and in 7 *Wend.* 148 ; 13 *id.* 465 ; 20 *id.* 241 ; 2 *Coms.* 464, the same doctrine is asserted. The remedy under this section, 36, is summary and of serious consequences. It involves the virtual dissolution of the corporation proceeded against, and the loss of its franchises. It is not like a creditor's bill, a proceeding in behalf of the creditor, for

the creditor instituting the proceedings obtains no preference, and is only to be paid ratably with the other creditors. (*Sections* 37, 79. *Morgan* v. *New York and Albany R. R. Co.*, 10 *Paige*, 290.) The proceeding is not the continuation of the original suit. It must be based upon a judgment at law, or a decree in equity, and the courts of law and equity were distinct when this statute was passed. It is an *original* proceeding in this court as a court of equity. The presentation of the petition is the first step in the proceeding. It is like the service of process to bring a party into court. It is like the presentation, with the petition for the sale of real estate to the surrogate, of an account of the personal estate—held indispensable in 1 *Hill*, 130 ; or the publication of notice to unknown owners in partition, the omission of which was held fatal, in 11 *Wend.* 647 ; or the service, in the form prescribed by statute, of the attachment against foreign corporations, as was the case in 3 *Barb.* 536 ; *S. C.*, *Wright* v. *Douglass*, (10 *id.* 110,) or the obtaining and service of an allowance of appeal, as in the case of *Seymour* v. *Judd*, (2 *Comst.* 464.) The *presentation of the petition* stating the prescribed facts confers the jurisdiction. The statute does not require any service upon or notice to the corporation, but the court would not act discreetly to proceed upon it without notice. In *Devoe* v. *Ithaca and Owego R. R. Co.* (5 *Paige*, 521,) on filing the petition duly verified, the chancellor granted an injunction and made an order for the corporation to show cause why the sequestration and receivership should not be granted. But the court might have proceeded without the notice, and had complete jurisdiction to order the sequestration and appoint the receiver upon the simple presentation of the petition, and error in doing so could only be corrected on motion or by appeal. Before the court could lawfully do this, however, it must have a petition from the *creditor in the judgment*, or his legal representatives, setting forth the due recovery of a judgment in a court of law or a decree in equity, with the due return of an execution thereon issued, unsatisfied in whole or in part. This is essential to confer upon the court the slightest power or authority to proceed in the case.

Bangs *v.* McIntosh.

No one else, under section 36, can lawfully invoke the power of the court to deprive the officers of the corporation of their legitimate control over its property and affairs, and divest it of its franchises. The petition in this case clearly was not such a petition. It is the petition of Harry Wilbur, who describes himself, it is true, as the attorney of William Lafferty, the judgment creditor. But it is none the less the petition of Wilbur. The appellation of attorney for Lafferty, is mere description of the person. (4 *Denio*, 258. 7 *Hill*, 177. 11 *Howard*, 11, 36, *and S. C.* 3 *Kern.* 83.) The presentation of this petition to the court clearly conferred no jurisdiction for the appointment of a receiver under the statute, no more so than if Wilbur had been an entire stranger to Lafferty. The original order therefore, made by Judge Taylor, for the sequestration of the property and effects of the Genesee Mutual Insurance Company, and for the appointment of a receiver of such property and effects, was entirely unauthorized and void.

The subsequent application in the same matter, and the order of Judge SELDEN of the 30th of May, 1853, to amend such petition, does not cure the defect. It is merely adding another *nullity* to the *prior nullity.* (9 *John.* 241, 190. 15 *Wend.* 310. 4 *Cowen*, 504.) When this court has acquired jurisdiction, it may amend any process or proceeding, to retain it and carry out and effectuate its object in furtherance of justice. But it cannot make a void proceeding valid by an amendment in the same proceeding or matter, and I take it to be a fundamental rule that where there is an absence of jurisdiction, the defect cannot be supplied by amendment or supplemental proceedings, so as to make the void proceedings valid from the beginning. (18 *Wend.* 675. 4 *John.* 309. 2 *id.* 190. 13 *How.* 353.) This court is a court of general jurisdiction, and every intendment is in favor of its jurisdiction. (9 *John.* 437. *Foot* v. *Stevens*, 17 *Wend.* 483.) Yet it must proceed according to the forms of law, as much as any other court or officer, and can exercise no power over life, liberty, or property, except by due process. When it has acquired jurisdiction of the person and subject matter, all its errors must be corrected by appeal

or other legitimate mode of review, and no allegation in respect to any such errors as affecting its jurisdiction, can be sustained. (4 *Denio,* 120.   7 *Wend.* 200.   *Stanton* v. *Schell,* 3 *Law Rep.* 329.)   The only difference between courts of general and courts of limited jurisdiction is, that the jurisdiction is presumed in the former case and must be shown in the latter.   (17 *Wend.* 483.   21 *id.* 41.)   Want of jurisdiction is equally fatal to the proceedings in both cases.   (*Bloom* v. *Burdick,* 1 *Hill,* 139. *Douglass* v. *Stewart,* 10 *Barb.* 110.   *The Chemung Canal Bank* v. *Judson,* 4 *Seld.* 254.)

II.   But assuming that the appointment of the plaintiff was valid, and was duly proved, it is next objected that the assessment was irregular in various particulars.   These objections to the assessment, I think untenable.   It was made under the sanction of the court, and if there was any injustice, inequality or irregularity in respect to it, the remedy of the parties affected thereby, was by motion to amend, rectify or modify the assessment.   This class of objections, I think cannot be raised on the trial, more than can be irregularities in the ordinary proceedings of a cause before issue or trial.   (2 *Hill,* 267.)   But this does not apply to the *notice* required to be given by the 10th section of the act, before the commencement of a suit against any defaulting member.   By this section the directors are to settle and determine " the sums to be paid by the several members thereof, as their respective proportions of any loss, and publish the same in such manner as they shall see fit, or as by their by-laws shall have been prescribed."   The act thus makes a *notice* necessary before the corporation can sue, but leaves it discretionary with the directors to prescribe the manner of the notice. The directors, by their by-laws, prescribed that notice of assessments should be given by the secretary, by publication in two newspapers printed in the county of Genesee, for three weeks successively, the last publication to be thirty days before the day fixed for assessment.   This by-law merely fixes the place and time of publication, but does not prescribe the form of the notice.   This is left, therefore, to be determined by a construc-

tion of section 10 of the act in respect to the character, office and occasion for the notice.

It seems to me that the notice published, as set forth in the case, does not answer the object, intent and spirit of the requirement respecting it in the charter. I think it defective in two particulars. First, it was premature. It was first published on the 16th of June, 1852. At this time no assessment had been made. The assessment was not completed till several months after that time. All that had been done at that date was the simple ascertainment of the rate per cent for making the assessment. The assessment was not complete and consummated till it was ascertained, fixed and determined by carrying out upon the extension book the amount which each member was to pay. The notice, to be of any practical use whatever; to be any thing else than a mere mockery; should state the amount which each member is to pay. That is clearly what is intended in the charter by requiring notice to be given before suit. The section should have a rational construction—one beneficial to the members—not one that makes it entirely nugatory. The notice published in this case is entirely insufficient and defective. It gives no sort of information to the members. No one could tell from it what sum he was required to pay. To hold the members bound to pay upon such a notice, or be subject to a suit and to judgment upon the whole premium note, would, I think, be highly unjust, as well as a gross perversion of the section in question. The objection, too, that the plaintiff was not entitled to recover interest on the amount of the premium note, I think, was well taken. The amount of the premium note was not *money due.* The right to recover for the whole amount of the note is based upon a default to pay an assessment of $6.10. To allow a recovery of interest in such cases would create an inequality of payment among the members. Those who paid their assessments without suit could not be compelled to pay interest on their deposit notes, and none of the members are liable to pay more than their deposit notes until the liability for a re-assessment arises under section 11 of the act, under which all liable to contribute to a common loss are bound to con-

tribute ratably to an extent not to exceed $1 on the $100 of their respective premium notes. In *The Rensselaer Glass Factory* v. *Reid*, (5 *Cowen*, 587,) Senator Spencer says "that the allowance of interest, as incident to a debt, is founded on the agreement of the parties, and that such agreement may be express or implied." Here is no express agreement to pay interest, and none can be implied except when the principal sum is *justly due.* (*Robinson* v. *Bland*, 2 *Barr*, 1086.) Here nothing is justly due but the assessment of $6.10. The recovery for the whole amount of the note is in the nature of a penalty, and interest is not recoverable upon a penalty. (1 *John.* 343. 3 *Cowen*, 155.)

T. R. STRONG, J., and WELLES, J., reserved their opinions on the first point, and concurred with Justice SMITH in all the residue of the above opinion.

New trial granted ; costs to abide the event.

[MONROE GENERAL TERM, March 2, 1857. *T. R. Strong, Welles* and *Smith*, Justices.]