AGRICULTURAL INSURANCE COMPANY, RESPONDENT,
*v.* HENRY BARNARD, APPELLANT, IMPLEADED, ETC.

*Committee of lunatic — application by, for leave to mortgage real estate — it must be accompanied by a bond — the lunatic is not entitled to notice of hearing before the referee — a report of the agreement to mortgage must be made —1874, chap. 446, tit. 2, secs. 6–17.*

An application by the committee of a lunatic for leave to mortgage his real estate, made under section 9 of title 2 of chapter 446 of 1874, must be accompanied by the bond required by sections 7 and 8 of the said act.   When such bond is not given and filed at the time of making the application a mortgage given in pursuance of an order of the court subsequently made is void.

No notice of a hearing before a referee appointed by the court upon such an application need be given to the lunatic.

A mortgage given by the committee without first reporting to the court the agreement made therefor, as required by section 11 of the said act, is void.

Where the committee has failed to file the bond or to make the said report the court has no power to allow the bond and report to be made and filed *nunc pro tunc,* and thereby render valid the void mortgage.

APPEAL from a judgment in favor of the plaintiff, entered on the decision of the court after a trial had at a Special Term.

*E. C. James*, for the appellant.

*A. H. Sawyer*, for the respondent.

RUMSEY, J.:

The action was brought to foreclose a mortgage given by Martin Thatcher, the committee of the person and estate of Henry Barnard, a lunatic.

The committee, after his appointment as such, took Barnard to the State Lunatic Asylum, where he remained until he was discharged therefrom. At the time of his discharge, in the summer of 1877, there was due to the asylum for his maintenance while there $1,425, and on the 1st day of October, 1877, an action had been commenced against the committee to recover it. On the tenth day of October, 1877, the committee presented to this court a petition, asking for leave to mortgage so much of the real estate of the lunatic as might be necessary to pay the debt to the asylum incurred for the maintenance of the lunatic. No bond was given or filed at the time of the presentation of the petition, or at any time before the mortgage was made.

The matter was referred to a referee, who proceeded to inquire into the truth of the allegations. He caused six days' notice of the hearing to be served by mail, but the notice sent to the lunatic was mailed to a place where he had not lived for a year, as the committee knew. The referee on the day fixed, took the testimony of the committee, no one appearing for the lunatic, and made his report, on which the court ordered " that to provide for temporary necessity, and to give time for beneficial sales of the lands, the said committee is hereby authorized and allowed to mortgage " two pieces of land mentioned " for the sum of $1,500."

Thatcher accordingly made the mortgage in suit. His action in making this mortgage was not reported to the court until after the mortgage had become due and this suit was pending. This action was commenced on the 28th day of November, 1878. On the 18th of March, 1879, a guardian *ad litem* was appointed for the lunatic, who appeared and answered on the 3d day of April,

1879. In July, 1879, the court at Special Term made an order directing the committee to file a bond in the proceeding to mortgage the real estate, which bond when filed it directed should have the same force and effect as if made on the presentation of the application and filed in the county clerk's office.

The bond was made, approved and was filed on the 15th day of September, 1879. On the same day, in July, 1879, the committee made his report of the agreement with plaintiff to loan the $1,500, which report was confirmed, and the mortgage ordered to be made; the committee at once reported that he had made a mortgage dated October 19, 1877, conditioned for the payment of the said sum of $1,500 due in one year.

The court at once confirmed this report, and ordered the money to be paid to the lunatic asylum to discharge the debt incurred for the support of the lunatic. All these reports and orders were, by the court, directed to be made and done with the same force and effect as if they had been made at the proper time when the proceedings to make the mortgage were pending. All were made on the 8th day of July, 1879, and were filed and entered September 15, 1879. Notice of the application for these orders was served on the attorney for the lunatic, and his guardian *ad litem* in this action, who did not appear on the motions. No other notice of said applications was given. An order was made July 9, 1879, reciting the fact that Barnard had been restored to his right mind and superseding the inquisition.

The court at Special Term held the mortgage good and ordered judgment for the plaintiff. Barnard appeals. The case contains only the judgment roll, but we have been furnished with certified copies of the petition and subsequent proceedings had to mortgage this property. We are at liberty to examine them on the appeal, at least for the purpose of sustaining the judgment. (*People* v. *Snyder*, 41 N. Y., 411; *Howard* v. *Moot*, 64 N. Y., 271; *Dunford* v. *Weaver*, 84 N. Y., 445.)

The first question presented by this appeal is, under which of the two proceedings authorized by the statute to sell or encumber the real estate of a lunatic this mortgage was given? Both of them are described in title 2, chapter 446, Laws of 1874. (Tit. 2, §§ 6-13, and §§ 17-20.) The one first provided for authorizes the disposition

of the real estate when it appears that it is necessary and proper for the support or maintenance of the lunatic, or for his education, or that his interests will be substantially promoted by it; or when it has been contracted to be sold and a conveyance cannot be made, or for any other peculiar reason or circumstances. (Sec. 9.) The other proceeding is simply to pay debts. It has in view the discharge of all the debts of the lunatic; and expressly requires that the money raised by it shall be applied on all the debts in an equal proportion. (Secs. 19–21.)

The findings of the court do not indicate that these proceedings in question were had under that branch of the statute. The finding is, that the petition asked leave to mortgage real estate to raise $1,500 to pay this debt. A reference to the certified copy of the papers shows that this was the nature of the proceedings, and that it must be governed by the rules laid down in sections 6 to 13 of the act. Indeed, proceedings to pay this claim of the lunatic asylum could not be taken under the authority given to mortgage or sell to pay the debts of the lunatic. This claim was not a debt of the lunatic. It was contracted for the maintenance of the lunatic by the committee who has no power to contract for the lunatic. (*Pearl* v. *McDowell*, 20 Am. Dec., 199.) If he paid it the court might allow it in his accounts, or the court could authorize real estate to be disposed of to pay it under title 2, section 9, but not under sections 17, *et seq.*

Did the court have jurisdiction to direct that this mortgage should be made? If there was such jurisdiction the subsequent defects are mere irregularities which cannot be used in this action to invalidate the mortgage. (Freeman on Void Jud. Sales, § 21.) It is a general rule in this class of cases where special statutory proceedings are relied on to take away title that everything required by the statute to give jurisdiction must be done. (*Sharp* v. *Speir*, 4 Hill, 76; *Ackley* v. *Dygert*, 33 Barb., 176; *Stilwell* v. *Swarthout*, 81 N. Y., 109.) Any substantial departure from its requirements makes the proceedings void. (*Stilwell* v. *Swarthout*, *supra.*) The proceedings had, appear by the findings of the court and the certified copies presented to us. We think that the petition contains all that is necessary.

Section 6 does not prescribe just what the petition shall contain,

but an examination of the petition shows that it sets out substantially the facts necessary to enable the court to find that the state of affairs existed which is required by section 9 to authorize some disposition of real estate. That was a practical compliance with the statute. (Freeman on Void Jud. Sales, § 11.) But it was not enough to authorize the court to act. The statute requires that a bond shall be given on the application. It requires the bond as a part of the application to the court, and it authorizes the court to act only when the bond has been filed. Such filing is one of the steps required before the court can proceed. (Secs. 7, 8.) It is a part of the application as much as the petition. Until that has been done the statute does not authorize any further step to be taken. The court does not have possession of the proceedings until the bond has been filed. The court can dispense with nothing, but every preliminary step, especially if it be one which has a semblance of benefit to the owner, must be complied with before jurisdiction is had. (*Corwin* v. *Merritt*, 3 Barb., 343; *Bloom* v. *Burdick*, 1 Hill, 138; *People* v. *Hulburt*, 46 N. Y., 110–115.)

These proceedings being statutory, even the Supreme Court is as to them a court of special jurisdiction, and it must be shown that the statute was strictly followed to enable it to acquire the right to act. (*Chamberlain* v. *Roch. S. P. V. Co.*, 7 Hun, 557; *Striker* v. *Kelly*, 2 Denio, 323; *Castellanos* v. *Jones*, 1 Seld., 164.) It appears by the judgment roll that no bond was filed. We think this defect was fatal to the proceedings, and that because of it no jurisdiction was acquired.

The counsel for appellant insists also that the proceedings were void because no notice of the hearing before the referee was given to the lunatic. It is sufficient to say that the statute does not require notice. (Sec. 8.)

He also insists that the mortgage is void because no report was made to the court before the execution of the conveyance, as required by section 11. This seems to have been held to be the law in proceedings to sell infants' real estate where the requirements of the statute are substantially like those of the law in question. (*Stilwell* v. *Swarthout*, 81 N. Y., 109; *Battell* v. *Torrey*, 65 id., 294.) We must, therefore, hold that this mortgage was void for this defect also.

We do not think the proceedings had in July, 1879, validated the former void acts of the committee.

The cases cited by the respondent upon this point are all cases where the court having acquired jurisdiction cured an irregularity *nunc pro tunc.* The power to do this is not denied, but that is not the power exercised here.

In this case the court undertook to validate this void mortgage after it had become due, and a suit was pending to foreclose it in which the defense of its invalidity had been set up. In these second proceedings none of the statutory requirements were observed, but they were simply supplementary to the original proceedings and intended to fill up the gaps left in them when they were taken. We have been referred to no case which sustains this course.

The case of *Bangs* v. *McIntosh* (23 Barb., 591–601, *et seq.*) is an express authority against it. The case of *Valentine* (72 N. Y., 184) holds that where a purchaser under such proceedings has paid his money, and before the conveyance is made discovers that the proceedings are void, he may require proceedings to be taken *de novo*, or a return of the purchase-money, but that case is no authority for an amendment of the same proceedings after they are finished and a suit is pending to test their validity.

Whether it would permit the plaintiff to recover from Barnard as for money paid to his use, if it should appear that he actually had the benefit of this $1,500 and gave nothing but this void mortgage for it, we need not say.

We find no way to hold the mortgage good, and the judgment must be reversed and a new trial granted, costs to abide event.

LEARNED, P. J., and OSBORN, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.