## SUPREME COURT.

GORHAM D. ABBOT agt. THE AMERICAN HARD RUBBER CO., WILLIAM JUDSON and others.

Where *four* out of seven *trustees* and *directors* of a manufacturing corporation sold the entire property of the corporation (except its real estate,) and transferred to the purchasers the whole business of the corporation, *without and against the consent of the other trustees and the corporators,*

*Held,* that the transfer was *without power,* and a *violation of the trust and confidence* reposed in the trustees and directors of the corporation. (*This decision affirms that at special term, 20 How. Pr. R., 199.*)

*New York General Term, May,* 1861.

APPEAL from an order at special term allowing to the plaintiff an injunction and receiver.

B. V. ABBOTT and E. W. STOUGHTON, *for plaintiff.*

S. A. FOOT and W. E. CURTIS, *for defendants.*

By the court, ALLEN, Justice. The history of the origin, rise and progress of "The American Hard Rubber Company," and the connection of the plaintiff with it, and of his dealings with and relations to the Goodyears, and his other associates in the corporation, and the several patents referred to, is curious and instructive. The facts alleged are all important, as bearing upon a question of fraud, in fact, involved in the case, and which will have to be met, unless the case upon a final hearing shall be disposed of upon the legal questions presented upon the undisputed facts. But upon this appeal, in the view I take of the legal rights of the parties, it will not be necessary to consider the question of actual fraud, and, therefore, I am relieved from the necessity of examining, very critically, the various and somewhat complicated and multifarious transactions stated with great detail in the complaint and answer. A very brief statement will suffice to present the questions which I deem essential to consider upon this appeal.

1. The " American Hard Rubber Company," of Connecticut, as distinguished from the " Beacon Dam Company," to which it succeeded, was originated and established to develop and bring into use the " Hard Rubber Compound," to be manufactured under the patents of the Goodyears, in pursuance of the several arrangements and agreements with the patentees, and with a view to the pecuniary benefit of the corporators.

2. Between December, 1850, and February, 1860, mainly through the instrumentality of the plaintiff, the property and corporate franchises of the " Beacon Dam Company " were acquired, the name of the corporation changed, more clearly to indicate the new purpose and objects of the corporators, its capital increased from $25,000 to $300,000, valuable and exclusive rights under the letters-patent for making the hard compound of India rubber, including the right to make and vend and sell to others the right to make and vend the compound, and to use it for the different purposes and in the manufacture of the various articles for which it is valuable, was secured to the company, large additions were made to the real property and water privileges of the corporation, and extensive manufactories and shops for making the compound, and bringing it into use in every variety of form and for every variety of purpose, with machinery adapted to the design, were erected and put in operation.

3. The rights and franchises were acquired, the capital stock of the corporation increased, the additional real estate purchased, and the manufactories erected and other expensive improvements made, solely for the purpose of making the interests and rights under the letters-patent available and profitable to the associates by manufacturing and using the compound under the patents. Except as connected with the manufacturing and bringing into use the hard compound of India rubber, the increased capital cannot be employed, and would not have been subscribed. The real

property is, so far as the case shows, comparatively value-less to the company and not essential to the carrying into execution the original purpose and objects of the " Beacon Dam Company," and the buildings and machinery erected and constructed upon the property adapted only to the manufacture of the hard rubber compound, and the making of the various articles to be made from it are, of necessity, utterly valueless for other purposes, and are worth but lit-tle more than the materials of which they are composed.

In briefer terms, the increased capital, the additional real estate acquired, and the manufactories and machinery there-on are valuable with the rights under the letters-patent, but of comparatively little if of any value, without such rights. Without the rights, no prudent man would think of investing a dollar in the property and franchises, or looking after or caring for an investment already made, in the hope or expectation of getting any return from it.

4. At the time of the transaction complained of, the plaintiff was a stockholder in the company to the amount of sixty-two thousand five hundred dollars, a creditor to the amount of twelve thousand five hundred dollars, and under liabilities for the company to a large amount. He was also a trustee or director of the corporation, and had been from an early period in its history, if not from the commencement of the enterprise.

5. The direction of the company was from June, 1855, committed to seven directors or trustees, of whom in Feb-ruary, 1860, the plaintiff and the defendants, Judson, Ropes, Norton and Henry B. Goodyear were five, and by law it required four to constitute a quorum for the transaction of business. On the 3d day of February, 1860, the four de-fendants last named met as trustees at the office of Judson, in New York, but whether a meeting of the board of trus-tees had been adjourned to, or legally called for that time and that place, so as to give efficacy to their acts as a board, does not very satisfactorily appear from the allega-

tions of the answer. The four trustees then resolved to sell to the firm of Poppenhusen & Konig, composed of the defendants, Poppenhusen, Konig & Funcke, all the personal property, tools, dies, machinery, fixtures, stock manufactured and unmanufactured, all the patent rights and privileges under the letters-patent belonging to the corporation, together with the benefit of all contracts made by the corporation, for one hundred and twenty thousand dollars, to be settled for by the twelve notes of the purchasers of ten thousand dollars each, payable one in each month for twelve successive months, and to lease the factory, buildings and premises to the same parties for one year at a rent of thirty-five hundred dollars.

6. On and after the 9th day of February, 1860, the resolution was carried into effect, and the sale consummated upon the terms mentioned.

7. The resolution was passed, and the sale effected without the consent and against the wishes of the plaintiff, and against his protest and remonstrance. His objections were well known to his co-trustees, and there is reason to believe were also known to the purchasers before the consummation of the sale.

8. On the 13th day of February, 1860, the defendants, Poppenhusen, Konig, Judson, Norton and Ropes, associated themselves together, and became incorporated under the general laws of this state, under the name of " The American Hard Rubber Company," for the manufacture of articles, compounds, goods and substances, composed in whole or in part of India rubber, &c., &c.; that is, for the same purpose, and under the same name as the Connecticut corporation, named defendant in this action. The defendants last named were the five trustees named in the certificate of organization.

9. Poppenhusen & Konig immediately transferred to the new corporation all the property, rights and effects trans-

ferred to them in the month of February, by the old corporation.

Upon the undisputed facts of the case thus fairly but imperfectly stated, the transactions complained of, and the sale to Poppenhusen & Konig, cannot be permitted to stand. A bare statement of the case shows as conclusively as an elaborate argument could establish it, that the transfer was without power and a violation of the trust and confidence reposed in the trustees and directors of the corporation.

1. It was *ultra vires*. It would be strong evidence of fraudulent intent under the circumstances, that a bare quorum of the body should undertake by their acts so seriously and radically to affect the future of the company and the interests of the stockholder. But waiving that question, and conceding that their acts stand as the acts of the whole board, I am of the opinion they were invalid for want of power. By the transfer, if allowed to stand, although the corporation still remained in force, with property which might be applied to some lawful purpose, the existence of the corporation was nominal, its substance was taken from it, and its property was valueless. As a Hard Rubber Company it had no rights, no franchises, and no existence. Its very title was a misnomer and a false pretence. Its stockholders, who had invested largely for the manufacturing of the hard rubber compound under patent rights vested in the company, have, by the acts of their agents, been deprived of these valuable rights, and of all connection with the manufacturing of rubber, and it will hardly satisfy them, or satisfy the law, to say that the name of the corporation is left to them, with a water-power and real property which they can, if they so agree, apply to the making of shoe-pegs or calico, or any manufactured article, other than that for which, and for which only, they associated together. It needs no expert to testify that machinery and fixtures adapted to the manufacture of the hard rubber compound, cannot, to any great extent, be used

for any other purpose. No matter how we may refine in argument, the fact is patent, that " The American Hard Rubber Company" was as effectually wound up and its affairs closed as practically as could have been done by a dissolution of the company by legal process. In the event of a legal dissolution, the associates could re-unite for some other purpose; so, now, if this transfer stands, they can, if they can bring their minds together, engage in some other lawful business within the general powers defined in the articles of association. But to do this, all must agree; and can a board of trustees, at their option, thus compel their principals (the corporators) to change their business and their investments? I think not. Trustees cannot, by their vote and their act, change the business of a corporation organized for the purpose of making woolen or cotton goods, into a manufactory of combs or gun-flints, although the business of the company may be named in the charter, in terms sufficiently general to include the substituted business. If the trustees in this case, chosen to carry on and prosecute the business of the company, could, by a sale of the rights under which it was operating, disable the company from going on, as is here attempted, the same trustees could, without the assent of the stockholders, employ the corporate property in the wildest and most hopeless schemes. The immediate and necessary effect of the act was to terminate the business, and thus practically and effectually destroy the corporation. This they could not do. It is certain that the officers could not directly, and without the assent of the great body of the society, dissolve it, and a majority of the stockholders could not do it against the dissent of the minority. (*Smith* agt. *Smith*, 3 *Deo. S. C. Ch. R.*, 557; *Ward* agt. *The Society of Attorneys*, 1 *Collyer*, 370.) In the case last cited the attempt was to surrender the charter with the view of obtaining a new charter for an object different from that for which the original charter had been granted, and a temporary injunction was granted.

The attempt here is to do by indirection what was prohibited when attempted directly, for the answer here is: "True, we have disabled you from carrying out the original purpose of your association, but you may do some other thing." Boards of directors are agents of the corporation, to manage its affairs and carry out the purpose and object of its formation, and not to inflict upon it political death. They are only authorized to do such things as are directly or impliedly directed or authorized by the charter. (*A. & A. on Corp.*, 280.) The minority in a corporation are only bound by the acts of a majority, and the corporators are only bound by the acts of trustees and managers when their acts are conformable to the organic law of the corporation, its articles of association or charter. When the acts are inconsistent with the object and purpose for which the body corporate was organized, they are void. (*A. & A. on Corp.*, § 499, 500.) An act which to all intents terminates the corporation by taking from it its powers to fulfil the purpose of its organization, is not consistent with the purpose of its constitution. That which changes the nature and business of a corporation from that for which it was created, does effectually destroy it for all the purposes for which it was formed. It is no longer the same corporation. An act which compels a corporation to change its business is no less invalid and repugnant to its charter than an act that directly makes the change. A similar act was styled by Judge WILLARD "an act of self-destruction which the law cannot tolerate." (*Commonwealth* agt. *Port Henry Iron Company*, 12 *Barb.*, 64.) The CHANCELLOR held, in *Ward* agt. *The Sea Insurance Company*, (1 *P.*, 294,) that the directors of a corporation could not, even with the consent of the stockholders, discontinue the corporate business and distribute the capital stock among the stockholders, unless expressly authorized by the legislative act. It is true that the decision proceeds upon principles of public policy, but it throws light upon the question as to the

power of directors and the limitations upon their power. So NELSON, Chief Justice, in the *Harlem and New Haven Railroad Company* agt. *Cornell*, (5 *Hill*, 383,) says: "The charter is the fundamental law of the association, the constitution which prescribes limits to the directors, officers and agents of the company not only, but to the action of the body corporate itself, and no radical change or alteration can be made or allowed by which new and additional objects are to be accomplished, or responsibilities incurred by the company, so as to bind the individuals composing it without their assent." *Robins* agt. *Clay*, (33 *Maine Rep.*, 123,) is in point, and decides that the directors of a corporation, as such, and without special authority for that purpose, have no authority to make sale of any portion of its property which is essential for the transaction of its customary business. So far as this case is authority, it is decisive of this appeal; and it is the judgment of a court of very high authority, and is well sustained by principle and by analogy. *Kean* agt. *Johnson*, (4 *Stockton*, 401;) *Bagshair* agt. *Easton County Railway Company*, (7 *Hare*, 114;) *Bank of Commerce* agt. *Bank of Brest*, (*Harrington, Ch'y R. Mich.*, 106,) are strongly confirmatory of the decision in 33 *Maine*, and stand upon principles which condemn the transfer to Poppenhusen & Konig, as unauthorized, and, therefore, void. The reasons of Judge SUTHERLAND at special term, (20 *How.*, 199,) are conclusive upon this point, and in them I fully concur.

2. The transfer was a violation of trust, and an abuse of the power vested in the directors to manage the affairs of the company for the benefit of the corporators. As before suggested, I do not purpose to consider the question of fraudulent intent, or fraud in fact, involved in the case.

No principle is better settled than that a person having a duty to perform for others cannot act in the same manner for his own benefit. A trustee cannot, directly or indirectly, by himself or through the agency of another, become

the purchaser of the trust estate. Neither can he purchase an interest in property and hold it for his own benefit when in respect to such property he has a duty to perform inconsistent with the character of a purchaser on his own account. (*Van Epps* agt. *Van Epps*, 9 *Paige*, 237 ; *Hawle* agt. *Cramer*, 4 *Cow.*, 717 ; *Slade* agt. *Van Vechten*, 11 *Paige* 31 ; *DeCatres* agt. *Le Ray de Chaumount*, 3 *Paige*, 178.) It requires no authority to establish the fact that the directors of the " American Hard Rubber Company" could not have transferred the property of the corporation directly to themselves, or to a corporation in which they were stockholders and directors. That is, it is evident they could not act as buyers and sellers in the same transaction, whether they acted in their individual capacity or as the directors of two trading corporations. (*New York Central Insurance Company* agt. *National Prot. Insurance Company*, 20 *Barb.*, 468.) This rule of restriction upon the powers of the trustee, invalidates every indirect, as it does every direct, transfer to himself, or for his benefit, and the intervention of a third person as a means or channel by and through whom the title is transferred from the *cestui que trust*, and eventually vested in the trustee, will not uphold the transaction, and sustain the title of the latter. Courts will look through the means to the end, and apply the proper remedy for the breach of trust. If the circumstances clearly show that the two transfers constitute but one transaction, they will be treated as parts of a single transaction, together perfecting a transfer from the trustee, *qua* trustee, to himself individually. When the thing transferred does not rest in the possession of the first transferrer, but is immediately by him passed over to the trustee for his benefit, or to an association represented by him, in whole or in part, the law will hold it to be a transfer in violation of the trust. The rights of *cestui que trusts* require in such cases that the law should presume that the intermediate taker of the property was but the agent and instru-

ment of the trustee, a means of conveyance. The contrary of the assumption ought not to be proved, or even alleged. It would be unsafe to uphold a transfer under such circumstances for the want of express proof of the actual intent of the parties from the facts or upon their oath that the re-purchase of the trustee was an after thought. When the title remains in the intermediate grantee but for a moment or a very brief period of time, and is at once transferred to the trustee or for his benefit, the presumption that the two transfers were only intended to effect the one object of conveying the property to or for the benefit of the trustee, is as strong as is the malicious intent to kill from the deliberate use of a deadly weapon. This rule of law which makes certain cases of presumption conclusive, merely attaches itself to the circumstances when proved; it is not deduced from them. It is not a rule of inference from testimony, but a rule of expediency for the public good. (1 *Greenl. Ev.*, 32.) Hence the transfer to Poppenhusen and Konig, in Connecticut, was at the latest on the 9th of February, and on the 13th of the same month, the new company was fully organized in New York, and the property and rights conveyed to Poppenhusen and Konig immediately transferred to it. The transfer from the original Hard Rubber Company, of which the plaintiff was a stockholder, to the new company, from which he is excluded, and in which three of the four trustees and directors making the conveyance with Poppenhusen and Konig are the sole corporators, was effected without any loss of time as soon as it could well have been done, so that the transfer may be said to have been made by Poppenhusen and Konig to the new company immediately on their receiving the title. There were only two entire days, exclusive of the Sunday intervening, for accomplishing the whole thing. It would be wrong to permit the presumption of intent attaching to these circumstances to be overcome by any amount of evidence. If it could be, stock-holders would never be safe

against the acts of faithless trustees. If evidence could prevail against the presumption, the affidavits of the parties implicated are entirely insufficient and unsatisfactory. But it is not necessary to comment upon them. The experiment of the acting trustees in the two Hard Rubber Companies has the merit of boldness as well as originality. Three of them marched out of the old company laden with spoils, with which they enriched themselves as stockholders of the new, and it cannot be that their wronged and injured associates are remediless. The plaintiff is entitled to the relief demanded, and an injunction and receiver are necessary to the preservation of the property and the protection of his interests, *pendente lite.*

The order of the court at the special term should be affirmed, with costs.