SIDWAY v. MISSOURI LAND & LIVE-STOCK CO., Limited.

(Circuit Court, S. D. Missouri, W. D.   April 2, 1900.)

1. FOREIGN CORPORATIONS—JURISDICTION OF COURT OF EQUITY TO DISSOLVE—APPOINTMENT OF RECEIVER.

A court of equity in the jurisdiction where a foreign corporation has a situs for the transaction of its business, and where its property is situated, is without jurisdiction, in the absence of a statute conferring it, to appoint a receiver for such corporation, with a view to winding up its affairs and distributing its assets, at suit of a resident minority stockholder, who complains alone of the internal management of its affairs, whereby the value of his stock has been diminished and is threatened with further prospective injury, where the corporation is solvent, and the directors and majority stockholders whose actions are complained of are nonresidents.

2. SAME—STATE STATUTE.

Such jurisdiction is not conferred by the Missouri statute of April 21, 1891 (Laws 1891, p. 75), which, after prescribing the conditions on which foreign corporations may do business within the state, and requiring them to maintain an office where legal service may be made upon them, declares that "such corporation shall be subject to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character, organized under the general laws of this state, and shall have no other or greater powers." The object of such provision is to subject such foreign corporations to the same liability to actions against them as domestic corporations, and to the same restrictions and duties respecting their operation and conduct, but does not confer upon courts of equity within the state visitorial jurisdiction over their internal affairs, or the power to wind up their business and distribute their property.

3. SAME.

Rev. St. Mo. 1889, §§ 2790–2792, which give the courts of the state jurisdiction, on petition by an officer or stockholder of a corporation, to require an accounting by its directors as to their official conduct; to remove them for gross misconduct, and require the election of others in their places; and, incidentally, to appoint a receiver to take charge of the business of the corporation,—do not confer authority to wind up a solvent corporation and distribute its property.

In Equity.   On demurrer to bill.

W. Cloud, for complainant.

Geo. Hubbert, for respondent.

PHILIPS, District Judge.   This is a bill in equity by a stockholder against a foreign corporation, the general purpose of which is to have a receiver appointed for the corporation, to conduct and manage its affairs for the protection of the complainant, who is a citizen of the state of Missouri.   The defendant is an alien corporation, organized under the laws of the United Kingdom of Great Britain and Ireland, with its principal office located at Edinburgh, Scotland, where its directors and all its stockholders, except the complainant and perhaps one or two others, holders of about 2,500 shares,—the complainant representing 1,000 shares,—reside.   The company was organized principally for the purpose of acquiring and selling lands in the state of Missouri and adjacent states, with its local business office and manager located in Newton county, in this district.   The original capital stock of the company was $500,000, which was increased to $750,000, of which $450,000 was paid in; and in addition to this it raised in cash upon its debentures the sum of $300,000, making a capital equal to the face

101 F.—31

value of its stock. With this capital the defendant purchased about 370,000 acres of land situate in counties lying in the southwestern part of the state of Missouri. The bill sets out with some particularity the history of the management of this business by the board of directors through its general manager, and claims that its affairs have been so managed and conducted as to show wasteful extravagance and unaccounted for expenditures, the lack of good business judgment and administration, so as to greatly depreciate the value of the stock, and that the course of management persisted in by the board of directors, with the approval of a majority of the alien stockholders, threatens to continue to depreciate the value of the complainant's stock, and that this course of conduct is actuated by a desire and purpose on the part of said nonresident majority stockholders to acquire the complete management and control of the complainant's interest, so as to destroy the value of his stock. The complainant specifies certain grievances as to the management of the corporation, some of which he admits theretofore had been corrected by the board, but that the most objectionable matters complained of were not remedied. The bill also sets out in detail the complaint formulated by the complainant and the other domestic stockholders, which was addressed to the alien majority stockholders, giving a summary of all the grievances of these minority stockholders respecting the bad business management of the properties of the company, in useless and wasteful expenditures, and the refusal of the directors to admit the complainant to an inspection of its books, and their failure to render to him any satisfactory account of an expenditure of about $300,000 claimed by the board to be covered under the general head of "Expenses"; that, at the annual general meeting of the stockholders prior to the institution of this suit, he laid all these matters before the stockholders at Edinburgh, Scotland, and that instead of said stockholders, thus assembled, heeding his complaints and rectifying the alleged wrongs, they approved of the course of management, and, in effect, authorized the continuance thereof, by the re-election of the same directors who are pursuing the same course of conduct in the management of the properties and business of the corporation. There are other averments and detailed statements contained in the bill, which it is not deemed essential to recite, as they do not affect the questions of law raised by the demurrer to the bill interposed by the defendant. The bill concludes by averring:

"That the corporation has wholly failed of the purpose for which it was organized, and the business should be wound up, and its assets distributed among the shareholders equitably; and, to that end, your orator prays that a receiver may be appointed to take charge of the property, books, accounts, and evidences of debt, all of which are within the jurisdiction of the court; that an account be taken of the assets of the company, and that the accounts and debts due to said company be collected and brought into court, and that its liabilities be paid off: and that its assets be equitably distributed among its shareholders in such manner as may to the court seem equitable and just,—and such other and further relief as to the court may seem meet."

This suit was instituted in the state circuit court of Newton county, where service was had upon the defendant corporation through its local managing officer; and upon the petition of the defendant, as

an alien, the case was removed into this court, where the defendant appeared and demurred to the bill.

There is no allegation of the insolvency of the corporation. On the contrary, it is distinctly admitted, and stated in the brief of complainant's counsel, that the company is solvent, with ample assets and resources, if properly managed, to not only meet its outstanding obligations, but yield large dividends to the stockholders. The important question, therefore, to be decided, is, has this court the right to interpose, at the relation of a single resident minority stockholder, to take charge of the business and property of this foreign corporation, and run it, through a receiver, with a view to winding up its affairs, and distributing its assets among its creditors and stockholders? There is no disguising the fact that the practical effect of such interposition would be to put an end to the active life of the corporation. Anything short of this would be ineffectual to afford the complainant the relief he seeks. It does not meet this contention to say that the mere appointment of a receiver and the administration of the business of the corporation do not ipso facto dissolve the corporation, as its franchise would nevertheless be left intact, and it would continue to exist as a legal entity. It is a recognized principle of corporation law that an act which to all intents and purposes terminates the corporation, by taking from it the means to fulfill the purposes of its organization, is inconsistent with the purposes of its constitution, because such act would work a practical dissolution of the corporation. Abbot v. Rubber Co:, 33 Barb. 578, 21 How. Prac. 193, 20 How. 199. High, in his work on Receivers (section 288), holds that courts of equity, in the form of a visitorial power over corporations, will not seize their assets and take away the management of their affairs from the hands of its managing officers, through a receiver, on the application of a creditor or shareholder, "since such interference would necessarily result in the dissolution of the corporation, and the court would thus accomplish indirectly what it has no power to do directly." Therefore the remedial power to be exercised by such courts should go no further than the granting of an injunction to restrain and prevent the misdeeds and misconduct of such managing officers, and the like. In Neall v. Hill, 16 Cal. 146, which was a bill against a corporation and its officers, etc., charging the officers with combining with the majority of the stockholders to have themselves elected as trustees, in violation of the by-laws, and that as such trustees they were guilty of fraud, collusion, and mismanagement, with a view to the depreciation of the value of the stock and to obtain the control thereof, the bill prayed for the removal of said officers, and for an accounting and winding up of the corporation. The corporation in that case was a domestic corporation, and the officers were made parties to the bill. It was held not only that the officers could not be removed by a court of equity, but that a receiver could not be appointed to sell all of said property and to settle up the affairs of the company. The court said:

"This decree, if permitted to stand, must necessarily result in the dissolution of the corporation, and in that event the court will have accomplished in an indirect mode that which in this proceeding it had no power to do directly. It is well settled that a court of equity, as such, has no jurisdiction over corporate bodies for the purpose of restraining their operations or winding up

their concerns. We do not find that any such power has ever been exercised in the absence of a statute conferring jurisdiction. There is no doubt that in the present case the court had jurisdiction to compel the officers of the corporation to account for any breach of trust, but the jurisdiction for that purpose was over the officers, and not over the corporation."

The question, therefore, arises whether or not a court of equity in the jurisdiction where the foreign corporation has a situs for transacting its business, and where its property is situated, and without the presence of its nonresident directors, has jurisdiction, at the suit of a minority stockholder, who complains alone of the internal management of its affairs, whereby the value of his stock has been diminished and is threatened with further prospective injury, to appoint a receiver for such corporation, and thereby assume the management of its business, with a view to winding up its affairs and distributing its assets. While there are persuasive reasons which appeal to a chancellor to exert to the utmost his powers to come to the relief of the resident stockholder, and save him the trouble, expense, and possible unequal chances of seeking redress in a distant foreign jurisdiction, it is sufficient for this court to say that, in the absence of a statute conferring such jurisdiction, the settled rules of equity seem to answer this question in the negative.

In Dodge v. Woolsey, 18 How. 331, 15 L. Ed. 401, the general doctrine was announced that:

"A stockholder in a corporation has a remedy in chancery against the directors to prevent them from doing acts which would amount to a violation of the charter, or to prevent any misapplication of their capital or profits which might lessen the value of the shares, if the acts intended to be done amount to what is called in law a 'breach of trust or duty.' So, also, a stockholder has a remedy against individuals, in whatever character they profess to act, if the subject of complaint is an imputed violation of the corporate franchise, or denial of right growing out of it, for which there is not an adequate remedy at law."

Mr. Justice Miller, in Hawes v. City of Oakland, 104 U. S. 450, 26 L. Ed. 827, gave this general statement of the law its proper limitation and application to the particular facts of that case, and, in discussing the general rule, formulated the following postulates: That there must exist as the foundation of the suit—

"Some action or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter, or other source of organization; or such a fraudulent transaction completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders, as will result in serious injury to the corporation or to the interests of the other shareholders; or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders; or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity."

It will be observed that in all these instances it is contemplated that the proceeding is against the directors or wrongdoers, and necessarily implies that the court acquires jurisdiction in personam over the directors or wrongdoers, and consequently that it is some act of omission or commission of theirs that is to be corrected, restrained, or controlled, such as where these officers are acting ultra vires, or

fraudulently, either to their individual advantage or in subservience to the majority of the stockholders, "as will result in serious injury to the corporation or to the interests of the other stockholders." Some color to the present action of the complainant might seem to arise from the last paragraph of the foregoing quotation. It may be that where the bill discloses a state of facts such as that the governing body, acting under the direction or control or in complicity with the managing stockholders, are doing some wrongful act to the injury of the minority stockholders, or in some way or fashion are illegally pursuing a course in the name of the corporation which is in violation of the rights of the other shareholders, the restraining and corrective power of a court of equity could be appealed to. But this implies that the offending majority are employing the corporation, through the directory, to work out some forbidden fraudulent purpose, to the injury of the minority stockholders. But the utmost that can be drawn from this is that the wronged stockholder would have a standing in a court of equity only in a suit against the directors and other stockholders to restrain them from further pursuing the course of conduct complained of, where they can be brought within the jurisdiction of the court; and this, as already stated, would be essentially a proceeding in personam against the offending stockholders and their supple instruments, the directors. The sum and substance of the matters complained of in this bill pertain to improvident and wasteful administration by the board of directors. And while there is in the conclusion of the bill the general averment "that divers persons, whose names and residences are unknown, have combined and confederated together, and have gained control of the property and assets of said company, and are wrongfully and purposely diminishing the value of the stock," etc., this is not more than the general confederacy clause in pleading, which might well have been omitted from the bill without affecting its sufficiency. It does not amount to a substantive averment of a specific charge of fraudulent conspiracy between the majority stockholders and the board of directors, so as to present an issuable fact. The bill, however, does distinctly allege that the matters of mismanagement by the board of directors and their managing agent in charge of the property were laid by complainant before the stockholders at Edinburgh, at their annual regular meeting, with a request that they be rectified, and that the convention of stockholders, on the contrary, ratified or approved the course of conduct pursued by the directors. If this be so, why does it not bring the case within the rule recognized by Mr. Justice Miller, on page 455, 104 U. S., and page 830, 26 L. Ed., in Hawes v. City of Oakland, as deduced from the holding of the vice chancellor in Foss v. Harbottle, 2 Hare, 461?

"That it was the duty of the plaintiffs—the two shareholders who complained of what had been done—to have called a meeting of the shareholders, or attended at some regular annual meeting and obtained the action of the majority on the matters in issue. The majority, he says, may have been content with what was done, and may have ratified the action of the board, in which case the whole body would have been bound by it."

In the case at bar, if the allegations of the bill were conceded to be sufficient to authorize an injunction against the offending stockhold-

ers and directors, they are not before the court, nor can they be brought in by process. Consequently only the corporation and its property are present to be acted upon. Therefore this action, to be effectual and conformable to the relief sought, must be by the court taking charge of this property through a receiver and administering it. It may be conceded that if it were alleged that this corporation is insolvent, and that these directors are threatening to proceed in the management of its assets so as to endanger the interests of the stockholders, the implied trusteeship of such directors to hold and conduct its affairs for the use and benefit of the creditors and stockholders would then become what may not inaptly be termed an "active trust," which would invite the interposition of a court of equity to appoint a receiver, and take charge of its assets and administer them for the benefit of the creditors and stockholders. But that is not this case. In Silver Mines v. Brown, 7 C. C. A. 412, 58 Fed. 644, the court of appeals of this circuit has given such clear expression to its judicial mind upon this question as to conclude the judgment of this court. It limits the power of a court of equity to interpose at the instance of a stockholder, where the company refuses to move, to a bill—

"To restrain the officers or directors of a corporation when it appears that in their capacity as agents or trustees of the stockholders they have committed acts that are tantamount to a breach of trust, where such acts consist of the fraudulent dealing with the corporate property or funds, or where they consist in engaging the corporation in enterprises that are beyond the scope of its charter powers. * * * But a court of equity has no power to interpose its authority for the purpose of adjusting controversies that have arisen among the shareholders or directors relative to the proper mode of conducting the corporate business, as it may do in cases of similar controversies arising between members of an ordinary partnership. Corporations are, in a certain sense, legislative bodies. They have a legislative power, when the directors or shareholders are duly convened, that is fully adequate to settle all questions affecting their business interests or policy; and they should be left to dispose of all questions of that nature without applying to the courts for relief. A stockholder of a corporation cannot successfully invoke the power of a chancery court to control its officers or board of managers, or to wrest the corporate property from their charge, through the agency of a receiver, so long as they neither do nor threaten to do any fraudulent or ultra vires acts, and so long as they keep within the limits of the by-laws which have been prescribed for their governance. If in either of the cases last specified the stockholder is nevertheless dissatisfied with the business policy that is being pursued, or the methods of corporate management, he must seek redress within the corporation, in the mode prescribed by its charter and by-laws, rather than by an appeal to the courts. Moreover, the doctrine is very well established that a court of equity has no power, at the suit of an individual, to decree the dissolution of a domestic corporation, and the winding up of its affairs, unless such extraordinary power has been conferred upon it by the term of some statute. The better view entertained is that at common law no such power to decree a surrender or forfeiture of the corporate franchises was vested in courts of equity, to be exercised at the suit of an individual, although some courts have upheld the right of a court of chancery to exercise that power when invoked by the state through its attorney general."

Further on the court said:

"It is hardly necessary to remark that if courts of equity, at the suit of a shareholder, and in the absence of a statute, have no jurisdiction to dissolve a domestic corporation and to wind up its affairs, much less can they exercise such powers with respect to foreign corporations."

In Stafford & Co. v. American Mills Co., 13 R. I. 310, the court was asked to appoint a receiver for a New York corporation doing business in. Rhode Island, where the larger part of the corporate property was located. Although the corporation entered its appearance, the court dismissed the bill because such jurisdiction was not conferred by their statute.

In Redmond v. Manufacturing Co., 13 Abb. Prac. (N. S.) 332, a stockholder sought to compel a foreign corporation to divide the assets among the stockholders. The court said:

"To attempt by a judgment of this court to compel a foreign corporation to distribute its assets among the stockholders because some of the directors are resident here, or because some of the funds were within the jurisdiction of the court, would be to assume a power which the court ought not to exercise, and render judgment which could not be enforced against the company in the place of its existence."

This doctrine is recognized and applied in Leary v. Navigation Co. (C. C.) 82 Fed. 775, where it was held that while, under certain conditions, a suit may lie against a corporation and the managing officers, in which a receiver may be appointed for the mere purpose of conservation, as incidental to the main object of the suit, "the principle does not apply to a case where the officers, being beyond the jurisdiction, cannot be brought to account, nor compelled by court to restore ill-gotten gains, and where the appointment of a receiver for the protection of the complainant's interests is the main object of the suit"; that, in all cases where it may become necessary to inquire into and regulate the internal affairs of a foreign corporation, resort should be had to the courts of the residence of the corporation, having jurisdiction to enforce such decrees; and that a court of equity will not undertake the management and control of a corporation "with a view of experimenting to ascertain if the stockholders' investment may not be made more profitable by having the business conducted by a receiver." Solicitous to see if there is not within the compass of the equity powers of the court, consistent with the allegations of the bill, any relief for the complainant, short of putting an end to the corporation by winding up its affairs and disbursing its assets, the court is much impressed by the following observation of Judge Hanford in the case last cited:

"If a receiver is to be appointed for the mere purpose of extending protection to the complainant's interests, by taking the property of the corporation into custody, so as to prevent the officers of the corporation from using it fraudulently, when may the court relinquish its custody? Certainly not until the officers whose honesty is questioned shall have disposed of their interests as stockholders, lest after an indefinite time the present relations of the parties are re-established, leaving the complainant in as bad a situation as he is now with regard to the future operations of the corporation."

The further contention of complainant is that the jurisdiction to afford the relief sought is conferred over this foreign corporation by the act of the Missouri legislature approved April 21, 1891 (Laws Mo. 1891, p. 75). The first section of this act, after declaring that every such corporation formed in any other state, territory, or country, before it shall be authorized to transact business in this state shall maintain an office or place in this state for the transaction of its business,

where legal service may be obtained upon it, and where it shall keep proper books to enable the corporation to comply with the constitutional and statutory provisions governing such corporations, declares that "such corporation shall be subject to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this state, and shall have no other or greater powers." This is followed with other provisions and limitations which are not material to the question here involved. This act in this particular is identical with the statute of Colorado (Sess. Laws Colo. 1893, pp. 88, 89, § 1) which was in force when the case of Silver Mines v. Brown, supra, on appeal from the state of Colorado, was considered; and, as no allusion was made thereto in the opinion of the court, the inference is that it was not claimed by the learned counsel engaged for the complainant in that case that the Colorado statute conferred the equity power contended for. On the contrary, it is to be assumed that the court of appeals did not regard this statute as in any wise enlarging the general equity doctrine in question, especially as the court cited approvingly the case of Mining Co. v. Field, 64 Md. 151, 20 Atl. 1039, in which was brought in review a like question of jurisdiction, as affected by the local statute of that state, which provided, among other things, that "any corporation not chartered by the laws of this state which shall transact business therein, shall be deemed to hold and exercise franchises within the state, and shall be liable to suit in any of the courts of this state on any dealings or transactions therein." In another section it was provided that "suits may be brought in any court in this state * * * against any corporation not incorporated under its laws, but deemed to hold and exercise franchises therein, or against any joint-stock company or association doing business in this state, for any cause of action," etc. It was held that even the language of this statute, broad and comprehensive as it is, did not have the effect to give the courts of Maryland jurisdiction over the internal affairs of nonresident corporations, or any visitorial power, nor the power "to exercise authority over the corporate functions, by-laws, or relations between the corporations and its members arising out of and depending upon the law of its creation. These powers belong only to the state which created the corporation." The general rule on this subject is that such statutes, prescribing the conditions and regulations under which foreign corporations may do business in the state, will not be construed as domesticating such corporations for all jurisdictional purposes unless such intention is clearly and unmistakably indicated by the affirmative terms of the statute, even where the original purpose of such organization was to do business chiefly in the particular state. Martin's Adm'r v. Railroad Co., 151 U. S. 673–683, 14 Sup. Ct. 533, 38 L. Ed. 311; Railway Co. v. James, 161 U. S. 545, 16 Sup. Ct. 621, 40 L. Ed. 802; Markwood v. Railroad Co. (C. C.) 65 Fed. 817. The evident object of the provision above quoted from the Missouri statute was to subject the foreign corporation to such liabilities for actions against it as a citizen would have against a domestic corporation, as on contract, express or implied, or for its acts of omission or commission whereby an injury should be done to another person or corpora-

tion; and subjecting it to the same restrictions and duties respecting its operation and conduct, and its liabilities for taxation and the like, which are imposed upon corporations of like character organized under the laws of the state, and that it shall exercise in the state, while doing business here, no other or greater powers than those of like corporations created under the laws of the state. Neither by expression nor implication does the statute confer upon the local courts the power of visitation, or the right of a court of equity to seize the property of a solvent corporation, and proceed by receivership to administer, wind up, and distribute its property among its creditors and stockholders, especially in the absence of its board of directors outside of the jurisdiction of the court, and where it does not appear that even such managing directors are doing any act ultra vires, or are engaged in or are contemplating the doing of any fraudulent act within the province of a court of equity to prevent by injunction.

The final contention of complainant is that the above act of 1891, coupled with sections 2790, 2791, and 2792 of the Missouri Statutes of 1889, confers the necessary jurisdiction on this court to appoint a receiver, etc. Said section 2790 enumerates the conditions under which, and instances in which, the circuit court of the state shall exercise jurisdiction over directors, etc.: First, to compel the directors to account for their official conduct in the management and disposition of the funds, property, and business committed to their charge; second, to compel the payment by them to the corporation and its creditors of all sums of money and the value of all property which they may have acquired to themselves or transferred to others, or which they have lost or wasted, by any violation of their duties or abuse of their powers as such directors; third, to suspend any director or other officer from exercising his office, for abuse of his trust; fourth, to remove any such director upon proof of conviction of gross misconduct; fifth, power to direct new elections to be held by the corporation or stockholders to supply any vacancy created by such removal; and, sixth, to restrain and prevent the alienation of the property of the company by the directors when it may be threatened, or there is reason to apprehend that it is intended to be made in fraud of the rights and interests of the company. Section 2791 authorizes the appointment of a receiver in such instances, to take charge of the business, property, etc., of the corporation, and collect, sue for, and recover debts and demands; and section 2792 declares that "the jurisdiction conferred by this article shall be exercised as in ordinary cases on petition filed by or at the instance of any director, trustee or other officer of such corporation, having general superintendence of its concerns, or at the instance of any creditor or stockholder of such corporation." From which it is perfectly clear that the proceeding contemplated is one directed against the offending directors for their official misconduct in the management, etc., of the funds, property, and business of the corporation, and to make them account for the misappropriation or misapplication of the funds of the corporation coming to their hands, with power to suspend and remove such officers, and to restrain and prevent the disposition of the corporate property by the directors when threatened, or there is good reason to apprehend that it is about

to be done in fraud of the interests of the company. This is but little, if anything, more than the powers already conferred by general jurisprudence upon courts of equity. Under such a statute, as said by the court in Bangs v. McIntosh, 23 Barb. 591, "affecting liberty or property, the prescribed form for obtaining jurisdiction of the subject-matter must be strictly pursued." It confers no authority upon the court of the state, even in respect of domestic corporations, to wind up the affairs of the corporation, but is evidently restrictive and supervisory in its operation over the managing directors, as such, in the enumerated instances. It results that the demurrer must be sustained.